**No. 2024-1540**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————————

LARGAN PRECISION CO., LTD.,

*Appellant*

v.

MOTOROLA MOBILITY LLC,

*Appellee*

———————————————

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
Case No. IPR2022-01156

———————————————

**OPENING BRIEF OF APPELLANT LARGAN PRECISION CO., LTD.**

———————————————

Kevin K. Russell
GOLDSTEIN, RUSSELL &
  WOOFTER LLC
1701 Pennsylvania Ave., NW
Suite 200
Washington, D.C. 20006
(202) 240-8433
*Attorney for Appellant Largan
Precision Co., Ltd.*

June 14, 2024

# U.S. PATENT NO. 9,784,948

## EXEMPLARY CLAIM

1.   An imaging lens system including, in order from an object side to an image side:

a first lens element having a concave image-side surface;

a second lens element;

a third lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric;

a fourth lens element with positive refractive power having a convex image-side surface; and

a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point;

wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system.

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Largan Precision Co., Ltd., certifies the following:

1.       The full name of every party or amicus represented by me is:

Largan Precision Co., Ltd.

2.       The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Largan Precision Co., Ltd.

3.       All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.       The names of all the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Patrick A. Doody,
Christopher Kao,
Brock S. Weber.

5.       Related cases meeting the criteria under Fed. R. Civ. P. 47.5(a):

*Largan Precision Co., Ltd. v. Motorola Mobility LLC*, No. 4:21-cv-09138 (N.D. Cal.).

6.        Information required under Fed. R. App. P. 26.1(b) and 26.1(c):

Not applicable.

June 14, 2024

/s/ Kevin K. Russell
Counsel for Appellant Largan
Precision Co., Ltd.

i

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT OF RELATED CASES ................................................... 1

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUES ........................................................... 1

INTRODUCTION ................................................................................. 2

STATEMENT OF THE CASE ............................................................... 5

I.     The '948 Patent................................................................................. 5

II.    Procedural History........................................................................... 8

SUMMARY OF THE ARGUMENT ................................................... 12

STANDARD OF REVIEW .................................................................. 14

ARGUMENT......................................................................................... 15

I.     The Board Erred In Refusing To Apply This Court's Genus-Species
       Decisions To The Written Description Challenge In This Case. ................. 15

       A.     The Written Description Question Here Is Governed By This
              Court's Genus-Species Cases........................................................... 16

       B.     The Board's Reason For Refusing To Apply The Genus-Species
              Cases Is Unfounded........................................................................... 22

II.    The Board's Invocation And Application Of *Gentry Gallery* Was
       Erroneous............................................................................................ 25

       A.     The Lack Of Clarity In The Board's Decision Requires Vacatur. ..... 26

       B.     The Board Misconstrued And Misapplied *Gentry Gallery*. ............... 26

1.  *Gentry Gallery* Applies Only When A Disclosure Clearly And Unambiguously Limits An Invention's Scope To Less Than The Full Genus Claimed.................................................. 27

2.  The Board Did Not, And Could Not, Find That The Disclosure Here Clearly And Unambiguously Limits The Invention To A +/- Doublet. ...................................................... 30

CONCLUSION.................................................................................. 36

# TABLE OF AUTHORITIES

## CASES

*Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*,
   745 F.3d 1180 (Fed. Cir. 2014) .......................................................................14

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ..............................................................4, 29, 31

*Antares Phrama, Inc. v. Medac Pharma Inc.*,
   771 F.3d 1354 (Fed. Cir. 2014) .......................................................................34

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) .....................................................15, 17, 19, 20

*Ariosa Diagnostics v. Verinata Health, Inc.*,
   805 F.3d 1359 (Fed. Cir. 2015) .......................................................................26

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   35 F.4th 1328 (Fed. Cir. 2022) .......................................................................11

*Bilstad v. Wakalopulos*,
   386 F.3d 1116 (Fed. Cir. 2004) .............................................................. *passim*

*Capon v. Eshhar*,
   418 F.3d 1349 (Fed. Cir. 2005) .......................................................................17

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*,
   541 F.3d 1115 (Fed. Cir. 2008) .......................................................................31

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
   291 F.3d 1317 (Fed. Cir. 2002) .............................................................20, 28, 31

*Cordis Corp. v. Medtronic AVE, Inc.*,
   339 F.3d 1352 (Fed. Cir. 2003) .............................................................. *passim*

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
   323 F.3d 956 (Fed. Cir. 2002) .......................................................................18

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
   93 F.3d 1572 (Fed. Cir. 1996) ...............................................................19

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998).................................................................................35

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998) ..................................................... *passim*

*Hologic, Inc. v. Smith & Nephew, Inc.*,
   884 F.3d 1357 (Fed. Cir. 2018) .......................................................15, 32

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2009 WL 230039 (N.D. Cal. Jan. 27, 2009)......................................25

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   645 F.3d 1336 (Fed. Cir. 2011) ..............................4, 13, 22, 23, 25, 32

*In re Affinity Labs of Texas, LLC*,
   856 F.3d 883 (Fed. Cir. 2017) ............................................................14

*In re Global IP Holdings LLC*,
   927 F.3d 1373 (Fed. Cir. 2019) ..........................................................34

*In re Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) .............................................14, 26, 35

*In re Rasmussen*,
   650 F.2d 1212 (C.C.P.A. 1981) ...........................................................19

*In re Smythe*,
   480 F.2d 1376 (C.C.P.A. 1973) ...........................................................19

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
   821 F.3d 1359 (Fed. Cir. 2016) ..........................................................15

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
   175 F.3d 985 (Fed. Cir. 1999) .............................................27, 28, 35

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
   10 F.4th 1330 (Fed. Cir. 2021) ............................................................ 18

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988) ............................................................. 34

*Lampi Corp. v. Am. Power Prods., Inc.*,
   228 F.3d 1365 (Fed. Cir. 2000) ............................................. 19, 23, 32

*Parus Holdings, Inc. v. Google LLC*,
   70 F.4th 1365 (Fed. Cir. 2023) ............................................................. 8

*Pride Mobility Prods. Corp. v. Permobil, Inc.*,
   818 F.3d 1307 (Fed. Cir. 2016) ........................................................... 14

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) ........................................................... 24

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336 (Fed. Cir. 2001) ..................................................... 16, 17

*ScriptPro LLC v. Innovation Assocs., Inc.*,
   833 F.3d 1336 (Fed. Cir. 2016) ........................................................... 29

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
   665 F.3d 1269 (Fed. Cir. 2012) ........................................................... 33

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
   734 F.3d 1332 (Fed. Cir. 2013) ........................................................... 34

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
   595 F.3d 1340 (Fed. Cir. 2010) ........................................................... 32

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ..................................................... 20, 29

*Utter v. Hiraga*,
   845 F.2d 993 (Fed. Cir. 1988) ............................................................. 17

*Vas-Cath Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991) ............................................................15

**STATUTES**

5 U.S.C. § 706 ............................................................................................14

5 U.S.C. § 706(2) .......................................................................................14

28 U.S.C. § 1295(a)(4)(A) ...........................................................................1

35 U.S.C. § 112 ......................................................................1, 8, 15, 17, 18

35 U.S.C. § 112(a) .....................................................................................15

35 U.S.C. § 120 ............................................................................................8

35 U.S.C. § 141(c) .......................................................................................1

35 U.S.C. § 318(a) .......................................................................................1

**REGULATIONS**

37 C.F.R. § 42.73 ........................................................................................1

## STATEMENT OF RELATED CASES

No appeal in this case was previously before this Court or any other appellate court. The following cases may be affected by this Court's decision in this case:

*Largan Precision Co., Ltd. v. Motorola Mobility LLC*, No. 4:21-cv-09138 (N.D. Cal.).

## STATEMENT OF JURISDICTION

The U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("Board") had jurisdiction over this *inter partes* review ("IPR") challenging claims 1-4, 6-16, 18-24, 28 and 29 of U.S. Patent No. 9,784,948 ("the '948 patent"). The Board entered its Final Written Decision under 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73 on January 3, 2024. Appx0001. Appellant Largan Precision Co., Ltd. ("Largan") filed a timely notice of appeal on March 1, 2024. Appx2428-2430. This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## STATEMENT OF THE ISSUES

1.    Whether the Board erred in refusing to apply this Court's genus-species decisions to decide whether the relevant patent application in this case satisfied the written description requirement of 35 U.S.C. § 112.

2.    Whether the Board erred in its application of *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998), to this case.

# INTRODUCTION

This appeal concerns a patent for a lens assembly designed to be used in mobile devices. Of most relevance to this appeal, the Board held that the specification in the '948 patent's ancestor applications did not support the full scope of the issued patent's claims. Because that holding is premised on an incorrect understanding of this Court's precedents, the Board's ultimate invalidation of the '948 patent is unsustainable and must be vacated.

The '948 patent claims a five-lens assembly with, among other limitations, "a first lens element having a concave image-side surface" and a "second lens element." Appx0049, col. 12 ll. 9-10. The claim does not describe any other characteristic of these two lenses, such as their size, material, curvature radius for the object-side surface of the first lens element and for both sides of the second lens element or, as most relevant here, their "refractive power" (*i.e.*, their ability to cause light rays to converge or diverge, Appx0422). The Board noted that the claims thus encompass permutations of the lens assembly that include a version with a first lens with positive power and a second lens with negative power (a "+/- doublet"), as well as the reverse—*i.e.*, a first lens with negative power and a second lens with positive power (a "-/+ doublet"). Appx0023. The Board concluded that the relevant ancestor application disclosed only the +/- doublet version and held that, as a result, the

2

application failed to provide a sufficient written description to support the full scope of the claims in the issued patent. *Ibid.*

While the Board focused on the refractive power of the lenses, it could have just as easily noted that the patent applications failed to provide examples of first and second lenses of every size, material, curvature radius, etc. covered by the patent. For example, the specification only discloses a first lens element having a convex object-side surface, which is not recited in the claims. Appellant Largan pointed out, however, that there is a body of cases addressing the need to describe such variations, cases that hold an inventor may claim a broader "genus" of devices without having to disclose every "species" that falls within it. *See* Appx0022; *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124, 1126 (Fed. Cir. 2004) (vacating Board decision invalidating patent for failing to disclose every variation of a sterilization device, explaining that the "disclosure of a single species within a genus may be enough support for a claim directed to the genus"). Largan argued that this case presented the genus-species question of whether disclosure of a lens assembly with +/- doublet could support a claim to a broader genus without power restrictions.

The Board, however, held that "the first and second lens elements of the challenged claims do not involve genus and species issues" given the relatively small number of possible permutations. Appx0022. Instead, it concluded that a different case, *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998),

required Largan to limit its claims to the specific permutation it disclosed in its 2012 application.  Appx0022.

Both parts of the Board's reasoning were wrong.  This Court has applied its genus-species analysis even when the "genus consists of only two species." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1352 (Fed. Cir. 2011) (five-judge panel).  The Board further misunderstood and misapplied *Gentry Gallery*, which simply holds that an inventor may not claim an entire genus when the patent's disclosure "unambiguously limited" the invention to only one species. 134 F.3d at 1480; *see also, e.g.*, *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1333-34 (Fed. Cir. 2003) (finding *Gentry Gallery* inapplicable given the "lack of clear statements by the patentee limiting the claimed invention").  The Board never asked whether the disclosures in this case satisfied that heightened disclaimer standard.  Nor would substantial evidence have supported a finding of clear disclaimer even if the Board had undertaken to decide that question.

Because the Board failed to apply the correct legal test, its decision must be vacated and the case remanded.

## STATEMENT OF THE CASE

### I.    The '948 Patent

The '948 patent relates to "an imaging lens system used in a mobile phone camera."   Appx0044 col. 1 ll. 22-23.   Figure 1 of the patent illustrates one embodiment:



Appx0031 fig.1.  As most relevant here, the figure shows a lens assembly with an aperture stop (150) in front of five lenses of varying characteristics (100, 110, 120, 130, 140), an infrared filter (160), and an image sensor on the image plane (170). Appx0047 col. 7 ll. 6-39, col. 8 ll. 34-36.

Each lens in such an assembly has a variety of relevant characteristics, including its size and material (*e.g.*, glass or plastic), the shape of its object- and image-side surfaces (*e.g.*, convex, concave, or planar), and the radius of any curvature at the portion proximate to the optical axis or at the off-axis portion of the lens. *See* Appx0420-0425. Another characteristic of any lens is its "**refractive power**" (or simply its "**power**"), which describes the lens's ability to refract (*i.e.*, bend) light in a way that causes the light rays to converge or diverge. Appx0422. A lens with a positive power causes rays of light to converge or come together. *Ibid.* A lens with a negative power causes them to diverge or spread apart. *Ibid*.

The **focal length** of a lens (often denoted as "**F**" or "**f**") is inversely related to its refractive power. Appx0422. A lens with positive power will, therefore, have a focal length with a positive number (*e.g.*, 3.85) while a lens with negative power will have a focal length with a negative number (*e.g.*, -8.18). *See* Appx0438-0439.

Sometimes, two lenses are paired in what is called a "**doublet**" in which one lens will have positive power and the other will have negative power. Appx0010.

The claim limitations principally relate to the features of the lenses in the patented five-lens assembly. Of the challenged claims, claims 1, 14, and 23 are independent. Appx006. Claim 1 is illustrative, and reads:

> 1. An imaging lens system including, in order from an object side to an image side:
>
> **a first lens element having a concave image-side surface;**

6

**a second lens element;**

a third lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric;

a fourth lens element with positive refractive power having a convex image-side surface; and

a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point;

wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system.

Appx0049 col. 12 ll. 7-26 (emphasis added). This appeal focuses on the first two limitations relating to the first and second lenses, in bold above.

The '948 patent claims priority through a number of earlier applications including, as most relevant to this appeal, Patent Application No. 13/433,438 filed on March 29, 2012 ("the 2012 application"), which claims priority to Patent Application No. 12/654,912 filed on January 8, 2010 ("Chen-069"). [1] *See* Appx0005-0006, 0044 col. 1, ll. 12-13. All of the applications share materially the same specification with the final issued patent. *See* Appx0012.

---

[1] The label "Chen-069" refers to the inventor, Chun-Shan Chen, and the application's patent publication number, 2011/0013069. *See* Appx0007 n.2, 1671.

## II.     Procedural History

On June 22, 2022, Appellee Motorola filed a petition for *inter partes* review of the '948 patent, seeking to invalidate claims 1-4, 6-16, 18-24, and 28-29. Appx0007, Appx0131.   On January 4, 2023, the Board instituted proceedings, Appx1856, and on January 3, 2024, it ruled the challenged claims invalid as anticipated by Chen-069,  Appx0026.

Motorola's argument proceeded in five steps.

*First*, it argued that "[f]or a claim to be entitled to 'the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112.'"  Appx0012 (quoting *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1373 (Fed. Cir. 2023)).

*Second*, Motorola asserted that the "'948 patent does not benefit from the filing date of the 2012 application in its chain because the 2012 application does not support the full breadth of the challenged claims."  Appx0012.   In particular, Motorola insisted that the specification in the 2012 application was required to disclose every permutation of powers that could be assigned to the first two lenses (*i.e.*, +/+, +/-, -/+, and +/-).  *See* Appx0009, Appx0012.  Motorola then argued that the 2012 application failed to do this because it allegedly disclosed only an assembly

with a first lens with positive power and a second lens with negative power. Appx0013.

*Third*, Motorola argued that this meant the '948 patent was entitled to a priority date no earlier than 2012. Appx0012; *see* Appx0023.

*Fourth*, "according to [Motorola], Chen-069, which was published before the 2012 application, is prior art to the '948 patent even though Chen-069 is a published ancestor application of the '948 patent." Appx0012.

*Fifth*, Motorola claimed that although Chen-069 shared the same specification as the 2012 application (which Motorola alleged failed to disclose anything but a +/- doublet), the specification nonetheless anticipated the full scope of the '948 patent (which covers both the +/- and the -/+ variations). Appx0023-0024.

The Board agreed with each step of the argument. As relevant to this appeal (which challenges only the second step), the Board began by construing the relevant claim terms. Motorola argued that "the plain and ordinary meaning of the challenged independent claims includes lens systems having first and second lens elements with (i) the same refractive power (i.e., both positive or both negative) and (ii) opposite refractive power (i.e., one positive and the other negative)." Appx0009. Largan, in contrast, argued that "construing the challenged 'claims to include first and second lens elements having the same refractive power . . . is improper.'" Appx0010 (citation omitted). Largan explained that "one of ordinary skill in the art would

construe the '948 patent claims to include first and second lens elements in the form of a 'doublet,' which requires the respective lens elements to have opposite refractive power, and thus includes only configurations of 'positive-negative' and 'negative-positive' for the first and second lens elements, respectively." *Ibid.* (cleaned up).

The Board concluded that it was sufficient that the parties agreed that "the challenged claims should be construed to encompass at least a lens system having a first lens element with a negative refractive power and a second lens element with a positive refractive power," *i.e.*, a -/+ doublet. Appx0010 (emphasis omitted). This was enough to decide the case, the Board believed, because it agreed with Motorola that "the 2012 application only describes lens element systems with a first lens element having a positive refractive power and a second lens element having a negative refractive power," *i.e.*, the +/- doublet. Appx0013; *see* Appx0014-0016 (describing reasons for that conclusion); Appx0015-0022 (rejecting Largan's arguments that specification described -/+ doublet as well).

The Board acknowledged both parties' invocation of this Court's genus-species cases. Appx0022. But it held "the cases that the parties discuss that relate to written description support in the context of genus and species limitations are not applicable here for that purpose." *Ibid.* "Simply put," the Board held, "the first and second lens elements of the challenged claims do not involve genus and species

10

issues." *Ibid.* This was so, the Board believed, because there are only "four possible independent configurations where the polarity of each lens is independent of each other." *Ibid.*

"Regardless," the Board continued, "*Gentry Gallery* applies here, and we find that the challenged 'claims may be no broader than the supporting disclosure, and therefore[, the 2012 application's] narrow disclosure will limit claim breadth.'" Appx0022 (quoting *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998)).

Accordingly, the Board held that "the 2012 application does not provide written description support for an imaging lens system with a negative refractive power first lens and a positive refractive power second lens" and, as a result, the "written description of the 2012 application does not support the full breadth of the challenged claims." Appx0023. The Board then agreed with Motorola that this meant that "Chen-069 is prior art to the challenged claims of the '948 patent." *Ibid.*; *see* Appx0012. And after comparing Chen-069 to the final claims in the issued '948 patent, the Board found that Chen-069 anticipated each of the claims Motorola challenged in its petition. Appx0023-0025.[2] This appeal followed.

---

[2] The Board also rejected Largan's challenge to the Board's jurisdiction to decide Motorola's written-description challenge in an IPR proceeding, citing this Court's then-recent precedent in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022). *See* Appx0025.

## SUMMARY OF THE ARGUMENT

The Board erred in refusing to apply this Circuit's genus-species decisions to the written description challenge in this case, instead relying on and misapplying a rule it derived from *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998).

**I.** The central question below—whether a description of lens assemblies with +/- doublets provides adequate written description support for generically claiming lens assemblies with first and second lenses without power limitations—is exactly the kind of issue addressed by this Circuit's genus-species cases. *See Bilstad v. Wakalopulos*, 386 F.3d 1116, 1123-25 (Fed. Cir. 2004) (describing cases applying the genus-species framework to patents involving lab devices, insulation, dog food, surgical instruments, light fixtures, and dental floss). The precise standard for deciding when disclosure of one or more species will support a claim to a genus varies with context. But the cases make clear that, contrary to the Boards assumption below, "an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention." *Cordis Corp. v. Medtronic AVE, Inc*., 339 F.3d 1352, 1365 (Fed. Cir. 2003) (citation omitted). To the contrary, this Court explained in *Bilstad* that "the general rule" is that "disclosure of a species provides sufficient written description support for a later filed claim directed to the genus," subject to two exceptions for "unpredictable arts" (like

biomedicine) and cases in which the "disclosure expressly disclaimed" the broader genus.  386 F.3d at 1125.

The Board believed that framework did not apply to this case because there were only "four possible independent configurations" of refractive power for the first two lenses.  Appx0022.  But the Board provided no authority or reason for that limitation.  And this Court has applied the genus-species cases even when a "genus consists of only two species."  *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1352 (Fed. Cir. 2011) (five-judge panel).

**II.**  The Board also wrote that "[r]egardless, *Gentry Gallery* applies here, and we find that the challenged 'claims may be no broader than the supporting disclosure, and therefore[, the 2012 application's] narrow disclosure will limit claim breadth.'"  Appx0022 (quoting 134 F.3d at 1480).

It is entirely unclear what the Board meant by this sentence.  It appears most likely that the Board viewed *Gentry Gallery* as providing an alternative to the genus-species framework it had just found inapplicable, in which case the Board's conclusion was wrong for the reasons just discussed.  It is also possible, however, that the Board intended this sentence as holding, in the alternative, that the 2012 application failed to provide an adequate written description even under the genus-species cases, treating *Gentry Gallery* as emblematic of the recognized exception for cases in which a patent's "disclosure expressly disclaimed" the broader genus.

*Bilstad*, 386 F.3d at 1125. The unresolvable uncertainty about what the Board meant is sufficient, in itself, to require vacatur and remand, for this Court is not empowered to affirm on a ground that the Board simply *might* have embraced. *See, e.g.*, *In re Lee*, 277 F.3d 1338, 1346 (Fed. Cir. 2002).

But regardless, remand is required because the Board misunderstood *Gentry Gallery*, which applied a "clear statement" rule the Board neither recognized nor applied. And even if the Board had undertaken to apply the proper rule, it cited no substantial evidence to support a finding of clear disclaimer.

## STANDARD OF REVIEW

This Court reviews decisions of the Patent Trial and Appeal Board under the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706. *See Pride Mobility Prods. Corp. v. Permobil, Inc*., 818 F.3d 1307, 1313 (Fed. Cir. 2016). The Court thus "set[s] aside the agency's actions if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'" *In re Affinity Labs of Texas, LLC*, 856 F.3d 883, 889 (Fed. Cir. 2017) (quoting 5 U.S.C. § 706(2)).

"Whether a claim satisfies the written description requirement is a question of fact." *Alcon Rsch. Ltd. v. Barr Lab'ys, Inc*., 745 F.3d 1180, 1190 (Fed. Cir. 2014). "However, . . . interpretation of precedent regarding the written description requirement is reviewed without deference." *Ibid*. When the Board has applied the

proper legal test, its written description conclusion is reviewed for substantial evidence. *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361 (Fed. Cir. 2018). "Substantial evidence review asks whether a reasonable fact finder could have arrived at the agency's decision." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016) (citation and internal quotation marks omitted).

## ARGUMENT

### I.    The Board Erred In Refusing To Apply This Court's Genus-Species Decisions To The Written Description Challenge In This Case.

Section 112 of the Patent Act requires that a patent's "specification shall contain a written description of the invention." 35 U.S.C. § 112(a). To satisfy this written description requirement, this Court has held, "the description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (alteration in original) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991)). The "test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ibid*. "Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ibid*.

15

The Board held that the '948 patent failed that test in this case because it believed the patent was required, but failed, to disclose "an imaging lens system with a negative refractive power first lens and a positive refractive power second lens" in order to provide written description "support [for] the full breadth of the challenged claims." Appx0023. That legal premise was mistaken. The problem the Board identified is addressed by this Court's genus-species cases, which reject "'the broad proposition . . . that in every case where the description of the invention in the specification is narrower than that in the claim there has been a failure to fulfill the description requirement in section 112.'" *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1123 (Fed. Cir. 2004) (alteration in original) (citation omitted). The Board concluded that the Court's genus-species cases do not apply to this case, but that holding is incorrect.

### A.    The Written Description Question Here Is Governed By This Court's Genus-Species Cases.

Any given limitation in a patent is capable of being implemented in a variety of ways. For example, a patent for an innovative wheelbarrow may include a limitation requiring a single "wheel," which would encompass innumerable variations of diameter, width, material, and wheel design. This Court's "case law makes clear, however, 'an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention.'" *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003) (quoting *Rexnord*

16

*Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001)).  At the same time, though, an inventor cannot claim a monopoly that extends beyond his or her invention simply by describing the invention in excessively broad language. Someone who has invented a special wheelbarrow cannot claim a patent monopoly on "wheelbarrows" generally, much less "wheeled conveyances."

This Court's genus-species cases help draw the line between these two extremes.  Those cases make clear that "[a] specification may, within the meaning of 35 U.S.C. § 112 para. 1, contain a written description of a broadly claimed invention without describing all species that [the] claim encompasses." *Cordis Corp.*, 339 F.3d at 1365 (second alteration in original) (quoting *Utter v. Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988)).  Instead, an inventor claiming a "genus" of devices can satisfy the written description requirement by describing a sufficient number of the "species" within the genus.  *See Ariad*, 598 F.3d at 1351.  The precise requirements vary depending on "the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue." *Ibid*. (alteration in original) (quoting *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005)).  For example, in the context of biological or other chemical inventions—in which the doctrine is most prominently and frequently invoked—this Court has developed a series of detailed rules.  *See Ariad*, 598 F.3d at 1349-50 (describing rules for functionally-defined genus of

17

genetic material); *see also Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1335 (Fed. Cir. 2021); *Enzo Biochem, Inc. v. Gen-Probe Inc*., 323 F.3d 956, 963-64 (Fed. Cir. 2002) (en banc).

This Court explored the doctrine's application to mechanical inventions, like the one at issue here, in *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1123-24 (Fed. Cir. 2004). *Bilstad* involved a patent for a sterilizing device with a "'moveable member manipulating objects in a plurality of directions.'" *Id.* at 1119 (citation omitted). The Board construed this to mean a member capable of manipulating between two and infinity directions, a claim construction this Court affirmed. *Id.* at 1119, 1123. The Board then held that because the specification only disclosed a member moving "in a small number of directions," it did not provide a sufficient written description for the full breadth of the claim. *Id.* at 1119. Thus, as in this case, the Board assumed that Section 112 required the inventor to describe in the specification every version of the device upon pain of invalidation. This Court rejected that conclusion. The Court explained that the case was controlled by decisions that have "considered the issue of written description support for an added genus claim when only a species is disclosed." *Id.* at 1123. Viewed through that lens, the question was whether the patent provided sufficient written description support for a genus that included devices with members manipulating between two and infinity directions when it

disclosed only a species of that genus (*i.e.*, a device with a member capable of manipulating "a small number of directions"). *Id.* at 1122-23.

The Court explained that it, and its predecessor court, have long rejected "'the broad proposition . . . that in every case where the description of the invention in the specification is narrower than that in the claim there has been a failure to fulfill the description requirement in section 112.'" *Bilstad*, 386 F.3d at 1123 (alteration in original) (quoting *In re Smythe*, 480 F.2d 1376, 1382 (C.C.P.A. 1973)); *see also ibid.* ("That a claim may be broader than the specific embodiment disclosed in a specification is in itself of no moment.") (quoting *In re Rasmussen*, 650 F.2d 1212, 1215 (C.C.P.A. 1981)). In fact, *Bilstad* explained, "disclosure of a single species within a genus may be enough support for a claim directed to the genus." *Id.* at 1124 (citing *In re Rasmussen*, 650 F.2d at 1215); *see also ibid.* (citing additional examples from *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572 (Fed. Cir. 1996) and *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365 (Fed. Cir. 2000)).

Indeed, as *Bilstad* held, this Circuit has recognized a "general rule that disclosure of a species provides sufficient written description support for a later filed claim directed to the genus," subject to two exceptions. 386 F.3d 1125.

*First*, "unpredictability in the particular field may warrant closer scrutiny of whether disclosure of a species is sufficient to describe a genus." *Ibid.*; *see also Ariad*, 598 F.3d at 1351 ("[T]he level of detail required to satisfy the written

description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology."). This exception applies, for example, in cases claiming "a vast genus of chemical compounds" or biomedical inventions. *Ariad*, 598 F.3d at 1349. In contrast, the "mechanical world" represents "a fairly predictable field" in which the exception is less likely to apply. *Bilstad*, 386 F.3d at 1126.

*Second*, an exception applies when the "disclosure expressly disclaimed" the broader genus. *Bilstad*, 386 F.3d at 1125. The Court gave the example of *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998), in which a patent disclosed a hip prothesis with a conical shaped cup but claimed a generic cup of any shape. *Bilstad* explained that the disclosure of the conical species did not support the claimed generic genus *not* simply because other shapes were unmentioned, but because "the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 cup" thereby "mak[ing] clear that the '589 patent discloses only conical shaped cups and nothing broader." *Bilstad*, 386 F.3d at 1125 (cleaned up) (quoting *Tronzo*, 156 F.3d at 1159); *see also Cordis Corp.*, 339 F.3d at 1365 (exception applies where disclosure "'clearly indicates that the invention is of a much narrower scope'" (quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc*., 291 F.3d 1317, 1323 (Fed. Cir. 2002))).

This framework makes perfect sense. Outside unpredictable fields like biomedicine, the most likely explanation for a patent's failure to describe every conceivable variation of a device is that those details are not part of the invention. That is why an inventor will not describe the size of a wheelbarrow's wheel (or its color, number of spokes, or material) or, here, why a patent might not specify the size, shape, or power of a lens or whether it is made from plastic or glass. A person of ordinary skill in the art will understand the omission to reflect that these details are not important to the invention unless something in the written description shows otherwise. Hence, the focus in genus-species cases is on whether there is something in the nature of the art that makes that assumption unsound (*e.g.*, its unpredictability) and, if not, whether something in the written description clearly shows that the invention does not extend to the full scope of the genus. When the arts are predictable, the specification's mere silence regarding a particular variant is no basis to conclude that the patent holder did not invent that version, much less to strip patent protection from even the versions expressly described.

In the case before it, the *Bilstad* Court vacated and remanded the Board's decision because it "made no findings on the unpredictability in the art or on whether Bilstad's disclosure expressly disclaimed manipulation in a larger number of directions than the 'small number' that the Board found his disclosure taught."

21

*Bilstad*, 386 F.3d at 1125.  Because the Board made the same mistake in this case, the same remand is required.

## B.  The Board's Reason For Refusing To Apply The Genus-Species Cases Is Unfounded.

The Board concluded that the genus-species cases were "not applicable" to this case but the only reason it gave has no merit.  Appx0022.

The Board held that the "first and second lens elements of the challenged claims do not involve genus and species issues" because there are only "four possible independent configurations where the polarity of each lens is independent of each other."  Appx0022.  Thus, the Board apparently believed that the genus-species framework does not apply when there is a relatively small number of species within the genus.  But it cited no authority for that position and this Court has rejected it. For example, in *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336 (Fed Cir. 2011), a five-judge panel of this Court considered a patent for computer memory chips.  In an early patent application, the inventor restricted its claims to devices having a "narrow multiplexed bus" but deleted that restriction in its continuing applications.  *Id.* at 1351.  The final patent thus encompassed two variations, "a multiplexed and a non-multiplexed bus."  *Id.* at 1351-52.  The challenger argued that the resulting broader claim was unsupported by the early application's description, which discussed only multiplexed busses.  *Id.* at 1351.  This Court resolved that dispute by applying its genus-species standards, even though it recognized that "the

supposed genus consists of only two species." *Id.* at 1352. After reviewing the evidence, the Court concluded that the early application's written description was adequate to cover both variants in the final patent even though the final patent's disclosures never mentioned one of the two species. *Id.* at 1352-53; *see also, e.g.*, *Lampi*, 228 F.3d at 1377-78 (disclosure of only identical half-shells was sufficient written description support for a claim encompassing both identical and non-identical half-shells).

There are good reasons for refusing to impose artificial restrictions on the number of species needed to invoke the genus-species framework. Even when there are only a small number of species in a claimed genus, requiring descriptions of each variation will quickly expand the patent when there are multiple limitations and multiple claims. In this case, for example, any given lens can be characterized not only by its power, but by its material (*e.g.*, glass or plastic) and the shape of its object- and image-side surface (*e.g.*, concave or convex), just to name a few characteristics. Even if each feature had only two options, that is 16 variations for each lens element (2 to the power of 4), or a total of over a million total permutations for a five-lens assembly (16 to the power of 5). Requiring a description of even a small slice of these possible permutations would quickly bloat patent applications for no good purpose. Indeed, even Motorola does not argue that this is required. *See*

Appx2174 ("[D]isclosure of a single species may provide written description support for a genus.").

Adopting the Board's position would also encourage patent challengers to try to characterize genera and species in ways that would evade this Court's genus-species cases and invalidate patents for failing to do the impossible. *Bilstad* provides one example. Although the Bilstad patent claimed a member capable of manipulating objects between two and an infinite number of directions, the Board characterized the claimed genus as involving only two species: members capable of moving in a "small number of directions" and those capable of moving in a "large number of directions." 386 F.3d at 1119. This Court nonetheless applied the Circuit's genus-species cases. *Id.* at 1125-26. The Court should do the same here and avoid the pointless semantic disputes that would follow from affirming the Board's rationale.[3]

---

[3] The Board also quoted *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997), as observing that "'a description of a species'" does not "'*always* constitute[] a description of a genus of which it is a part.'" Appx0022 (emphasis added). It is unclear what the Board took from this uncontested proposition. Largan never argued that description of a species "always" constitutes an adequate disclosure of a genus; instead, Largan relied on the framework *Bilstad* described for deciding when such a disclosure is sufficient. *See* Appx0022, Appx1924-1925, Appx1933-1934. Certainly nothing in the 1997 *Eli Lilly* decision casts any doubt about the correctness or applicability of the test this Court described in *Bilstad* in 2004.

## II.    The Board's Invocation And Application Of *Gentry Gallery* Was Erroneous.

After rejecting the genus-species framework, the Board wrote that "[r]egardless, *Gentry Gallery* applies here, and we find that the challenged 'claims may be no broader than the supporting disclosure, and therefore[, the 2012 application's] narrow disclosure will limit claim breadth.'" Appx0022 (alteration in original) (quoting *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998)). It is quite unclear what the Board meant by this. Most likely, the Board conceived of *Gentry Gallery* as providing a different test than the genus-species cases (*i.e.*, one that limits claims to the specific versions disclosed) and held that *Gentry Gallery's* test rather than the genus-species framework applied here because there were only a few variations at issue. If that is what the Board believed, it misunderstood the law for the reasons just described.

It is also conceivable that the Board intended to convey that even if the genus-species framework applied here, something in *Gentry Gallery* meant that the genus-species test was unsatisfied in this case. In particular, it is possible that the Board viewed *Gentry Gallery* as an application of *Bilstad v. Wakalopulos'*, 386 F.3d 1116 (Fed. Cir. 2004), second exception for express disclaimers. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 230039, at *14 (N.D. Cal. Jan. 27, 2009) (unpublished) ("This second [*Bilstad*] exception may provide a home for cases like *Gentry Gallery v. Berkline Corp.* as well."), *aff'd*, 645 F.3d 1336 (Fed. Cir.

2011). As discussed below, however, that possibility cannot avoid the need for vacatur and remand either.

### A.    The Lack Of Clarity In The Board's Decision Requires Vacatur.

Although it is possible that the Board intended its one-sentence reference to *Gentry Gallery* to be an application of the genus-species framework, that mere possibility is not sufficient to save the decision. This Court is limited to affirming on grounds the Board *actually* adopted, not on grounds that merely *might* have been the basis for its decision. *See, e.g.*, *In re Lee*, 277 F.3d 1338, 1346 (Fed. Cir. 2002). While this Court may affirm if it can "reasonably discern" that the Board "followed a proper path," *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015), the best this Court could do in this case is guess at the Board's true reasoning.

### B.    The Board Misconstrued And Misapplied *Gentry Gallery*.

It ultimately makes no difference whether the Board was right in believing that *Gentry Gallery* was applicable precedent for this case (either as an application of, or alternative to, the Circuit's genus-species cases), because the Board misconstrued that case's teachings and misapplied its rule. In particular, the Board failed to recognize that "*Gentry Gallery* . . . applied the 'proposition that a broad claim is invalid when the entirety of the specification *clearly* indicates that the invention is of a much narrower scope'" than the patent claims. *Cordis Corp. v.*

*Medtronic AVE, Inc*., 339 F.3d 1352, 1365 (Fed. Cir. 2003) (emphasis added) (citation omitted); *see also Johnson Worldwide Assocs., Inc. v. Zebco Corp*., 175 F.3d 985, 993 (Fed. Cir. 1999) (*Gentry Gallery* requires that the specification "unambiguously limit" invention to specific variations described in disclosure).  And even if the Board had undertaken to apply the correct standard, it failed to cite substantial evidence to substantiate the clear disclaimer *Gentry Gallery* requires.

    *1.*    Gentry Gallery *Applies Only When A Disclosure Clearly And Unambiguously Limits An Invention's Scope To Less Than The Full Genus Claimed.*

*Gentry Gallery* considered a written description challenge to a patent addressing a sectional sofa with two recliners separated by a center console housing the recliners' controls.  *See* 134 F.3d at 1474-75.  By putting the controls on the console between the recliners, the invention solved a problem in the prior art which required either putting the two recliners in an L-shaped configuration (which was "not usually comfortable when the occupants are watching television because one or both occupants must turn their heads to watch the same television set") or locating the recliners at opposite ends of the sofa (which was "not comfortable or conducive to intimate conversation").  *Ibid.*  The final patent claims nonetheless did not specify a location for the recliner controls, thereby sweeping in sofas with controls placed outside the center console.  *Id*. at 1475.  This Court found that "the original disclosure clearly identifie[d] the console as the *only possible location* for the

controls," *id.* at 1479 (emphasis added), and thereby "*unambiguously* limited the location of the controls to the console," *id.* at 1480 (emphasis added). The patent therefore failed the written description requirement by asserting claims "broader than the supporting disclosure." *Ibid.*

This Court has repeatedly stressed that the result in *Gentry Gallery* turned on the unusual clarity with which the specification disclaimed inventing anything other than a sectional sofa with controls on a central console. In *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999), for example, this Court explained that "*Gentry Gallery* . . . considers the situation where the patent's disclosure makes *crystal clear* that a particular (*i.e.*, narrow) understanding of a claim term" is all that was disclosed. *Id.* at 993. The Court rejected the challenger's reliance on *Gentry Gallery* because the specification in *Johnson* did "not unambiguously limit" the invention to only a subset of the devices claimed. *Ibid.* (cleaned up).

Likewise, in *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003), this Court explained that "*Gentry Gallery* . . . applied the 'proposition that a broad claim is invalid when the entirety of the specification *clearly indicates* that the invention is of a much narrower scope.'" *Id.* at 1365 (emphasis added) (quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002)). *Gentry Gallery* did not apply in *Cordis* because even though the

28

specification did not describe every variation of the "plurality of slots" claimed in the patent, the disclosure did "not unambiguously limit the meaning of the term to the narrower embodiment." *Id*. at 1364-65 (cleaned up).

Similarly, in *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003), the Court explained that "*Gentry* concluded that the inventor had *clearly* expressed in the written description that he considered his invention to be limited to the specific location of the controls on the console on the sofa ('the only possible location') and that any variation was 'outside the stated purpose of the invention.'" *Id.* at 1333 (emphasis added). "Because of [a] lack of clear statements by the patentee limiting the claimed invention" in *Amgen*, the Court held that it "cannot invalidate a patent for failure to describe a method of producing the claimed compositions that is not itself claimed." *Id.* at 1334; *see also ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1341 (Fed. Cir. 2016) (specification in *Gentry Gallery* "*clearly* limited the scope of the invention[] in ways that the claims *clearly* did not" (emphasis added)).

*Gentry Gallery*'s heightened clarity requirement aligns with *Bilstad*'s teaching that disclosure of a single species will fail to support a claim to the corresponding genus (in a predictable field) only if the specification "expressly disclaimed" the broader scope. 386 F.3d at 1125. The Court in *Bilstad* cited *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998), as an example, explaining that the

specification in that case "specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 cup." *Bilstad*, 386 F.3d at 1125. "'Such statements,'" this Court explained, "'*make clear* that the '589 patent discloses *only* conical shaped cups and nothing broader.'" *Ibid.* (first emphasis added) (citation omitted).

> 2. *The Board Did Not, And Could Not, Find That The Disclosure Here Clearly And Unambiguously Limits The Invention To A +/- Doublet.*

The Board's decision exhibits no awareness of *Gentry Gallery*'s heightened clarity requirement (much less *Bilstad*'s standard for express disclaimer). Instead, the Board proceeded from the opposite assumption, believing that the specification could provide an adequate written description only if it affirmatively disclosed every species claimed, such that mere silence regarding the -/+ doublet sufficed to find a written description failure. *See* Appx0022 (interpreting *Gentry Gallery* simply to require that "the challenged 'claims may be no broader than the supporting disclosure'" (quoting *Gentry Gallery*, 134 F.3d at 1480)).

Nor did the Board make any of the factual findings required to invoke *Gentry Gallery*'s rule. The opinion never finds that the specification "clearly identifies" the +/- doublet "as the only possible" configuration, or that the disclosure "unambiguously limited" the invention to that configuration. *Gentry Gallery*, 134 F.3d at 1479, 1480; Appx0012-0023. The closest the Board came was finding "that

the inventor of the 2012 application considered having positive refractive power for the first lens element and negative refractive power for the second lens element to be an essential element of his invention."  Appx0021 (citing *Gentry Gallery*, 134 F.3d at 1479).  As discussed below, the reasons it cited do not constitute substantial evidence for that conclusion.  But regardless, the Board did not find that any evidence *clearly* or *unambiguously* showed that the inventor viewed the +/- doublet as an "essential element" or that the evidence clearly and unambiguously excluded or disclaimed the -/+ doublet.  *See ibid*.  And even setting both those problems aside, this Court has rejected the contention that *Gentry Gallery* "mandat[es] . . . requiring that the claims incorporate those elements" an inventor may deem "essential" to the invention.  *Cooper Cameron Corp.*, 291 F.3d at 1323; *see also Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008) (finding error where "[i]n essence, the court applied an essential element test"); *Amgen Inc.*, 314 F.3d at 1333 (refusing to "view *Gentry* as a watershed case, in reliance on an isolated statement—probably only dicta—that one of ordinary skill in the art would clearly understand that the location of the reclining controls on the claimed sectional sofa 'was not only important, but essential to [the] invention'" (alteration in original) (citation omitted)); Appx2170-2171 (Motorola acknowledging that this Court "has expressly stated that *Gentry Gallery* did not create an 'essential' or omitted element test").

Nothing in the discussion leading up to the Board's "essential element" conclusion provides substantial evidence for that finding or constitutes the analysis *Gentry Gallery and Bilstad* require. For example, the Board pointed out that the -/+ variant is never mentioned in the 2012 application's description, while the +/- version is. *See* Appx0014 (citing Appx0620-0621 (summary); Appx0623, Appx0626-0627 (description of preferred embodiment); Appx0646 (abstract); and Appx0630-0631, Appx0633-0634, Appx0636-0637 (figures)). But that is true in every genus-species case—the question arises only when a patent claims a genus without describing every species. And this Court has repeatedly upheld patents claiming a genus even though the patent described only one species. *See, e.g.*, *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361-62 (Fed. Cir. 2018) (patent validly claimed generic "light guides" even though only disclosed "fibre optic bundle"); *Hynix Semiconductor*, 645 F.3d at 1352-53 (patent validly claimed both multiplexed and non-multiplexed busses, even though only described versions with multiplexed busses); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1359-61 (Fed. Cir. 2010) (patent validly claimed a "single action of a user input device" even though only ever described using "one click of a mouse"); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1378 (Fed. Cir. 2000) (patent validly claimed all light fixtures using identical or non-identical half-shells, even though disclosure only discussed identical version).

The Board stressed that one of the preferred embodiments not only described a version of the assembly with a +/- doublet but also "explain[ed] the reasons for the polarity" of the first and second lenses.  Appx0014-0015; *see also* Appx0015 (noting that same discussion explains that the "structure for the fourth lens depends on the first lens having positive refractive power").  But that simply shows that there were reasons for choosing the +/- variant for that particular preferred embodiment; it does not establish that a different variant would be unsuitable in a different embodiment.  The Board thus overlooked the "truism that a claim need not be limited to a preferred embodiment."  *Gentry*, 134 F.3d at 1479; *see also Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1286 (Fed. Cir. 2012) (The "mere fact that [the inventor] chose to reduce his invention to practice using" one species rather than another "is not relevant to the written description inquiry."); *see also* Appx0640 (2012 application stating that the "preferred embodiments depicted above are exemplary and are not intended to limit the scope of the present invention").

The Board also "noted" that the description of the first preferred embodiment stated that the third lens could have either positive or negative power, which the Board "viewe[d] as evidencing that when the refractive power of a lens may have either polarity for its invention, that the 2012 application discloses such."  Appx0015-0016.  At most, however, that simply buttresses the Board's conclusion that the only version of the invention described in the application is the +/- doublet.

But as just discussed, simply failing to describe other variants is not, in itself, sufficient ground to find a lack of written description for the broader generic claim. The question under *Gentry Gallery* and *Bilstad* is whether there is something *else* in the patent *beyond* mere silence that unambiguously conveys that the invention is limited to the variant specifically described in the preferred embodiments and elsewhere in the specification.

Finally, the Board also noted that the independent claims in the 2012 application were limited to a +/- doublet. Appx0016. But this Court has recognized that inventors often include narrower claims than their specifications would support in early applications and may properly expand their claims later on to encompass the full scope supported by the specification. *See, e.g.*, *In re Global IP Holdings LLC*, 927 F.3d 1373, 1375, 1377-78 (Fed. Cir. 2019); *Antares Phrama, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013); *see also Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) (holding "there is nothing improper, illegal or inequitable" in "amend[ing] or insert[ing] claims" so long as the changes "comply with all statutes and regulations"). That the inventor here followed that practice is hardly unambiguous evidence that the invention is limited to the +/- doublet.

At bottom, even if some of these considerations provided *some* support for a disclaimer finding, the Board neither found, nor could have found, that this evidence made it "crystal clear" that the invention described in the 2012 application was limited to the +/- doublet. *Johnson*, 175 F.3d at 993.

*     *     *

This Court need not decide whether the evidence would have supported the Board's written description holding if the Board had applied the proper legal framework and made the required factual findings. When this Court concludes that the Board "'misinterpreted the law, it will set aside the agency's action and remand the case—even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason.'" *In re Lee*, 277 F.3d at 1346 (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)); *see also id.* at 1345-46 (explaining this Court is "'powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" (citation omitted)); *Bilstad*, 386 F.3d at 1126 (vacating and remanding because applying genus-species test "requires fact findings this court is not permitted to make").

## **CONCLUSION**

For the foregoing reasons, the Court should vacate the Board's invalidation of claims 1-4, 6-16, 18-24, and 28-29 and remand for reconsideration under the proper legal standards.

DATED: June 14, 2024                Respectfully submitted,


                                                    /s/ Kevin K. Russell
                                                    Kevin K. Russell
                                                    GOLDSTEIN, RUSSELL &
                                                        WOOFTER LLC
                                                    1701 Pennsylvania Ave., NW
                                                    Suite 200
                                                    Washington, D.C. 20006
                                                    (202) 240-8433

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Brief for Appellant was filed electronically using the CM/ECF system and served upon registered counsel by operation of the Court's CM/ECF system on June 14, 2024.

/s/ Kevin K. Russell

## **CERTIFICATE OF COMPLIANCE**

1. This Brief for Appellant complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7). The brief contains 8,179 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.84 in 14-point Times New Roman.

Dated: June 14, 2024

/s/ Kevin K. Russell

**ADDENDUM**

Trials@uspto.gov
571-272-7822

Paper 30
Date: January 3, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

MOTOROLA MOBILITY LLC,
Petitioner,

v.

LARGAN PRECISION CO., LTD.,
Patent Owner.

———————————

IPR2022-01156
Patent 9,784,948 B2

———————————

Before JON M. JURGOVAN, NORMAN H. BEAMER, and
JOHN D. HAMANN, *Administrative Patent Judges*.

HAMANN, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2022-01156
Patent 9,784,948 B2

## I.    INTRODUCTION

In this *inter partes* review, instituted pursuant to 35 U.S.C. § 314 (2018), Motorola Mobility LCC ("Petitioner") challenges the patentability of claims 1–4, 6–16, 18–24, 28, and 29 ("the challenged claims") of U.S. Patent No. 9,784,948 B2 (Ex. 1001, "the '948 patent"), owned by Largan Precision Co., Ltd. ("Patent Owner").  We have jurisdiction under 35 U.S.C. § 6.  This Final Written Decision is entered pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73 (2022).  For the reasons discussed herein, we determine that Petitioner shows by a preponderance of the evidence that the challenged claims are unpatentable.

### A. Procedural History

Petitioner filed a Petition requesting *inter partes* review of the challenged claims of the '948 patent.  Paper 2 ("Pet.").  Patent Owner filed a Preliminary Response.  Paper 6.  With our authorization, Petitioner filed a Preliminary Reply (Paper 7) addressing the issue of real parties-in-interest, and Patent Owner filed a Preliminary Sur-reply (Paper 8) in response.  We instituted *inter partes* review of the challenged claims of the '948 patent on the ground raised in the Petition.  Paper 13 ("Dec. on Inst."), 24.

Following institution, Patent Owner filed a Response to the Petition.  Paper 19 ("PO Resp.").  Petitioner filed a Reply to Patent Owner's Response.  Paper 21 ("Pet. Reply").  Patent Owner filed a Sur-reply to Petitioner's Reply.  Paper 23 ("PO Sur-reply").

An oral hearing was held on October 12, 2023.  A transcript of the oral hearing is included in the record.  Paper 29 ("Tr.").

IPR2022-01156
Patent 9,784,948 B2

### B. Real Parties-In-Interest

Petitioner states that it "is the sole real party-in-interest." Pet. x. Petitioner adds that "Motorola Mobility Holdings, LLC, owns 100% of Motorola Mobility LLC's stock and is, indirectly, a wholly owned subsidiary of Lenovo Group Limited." *Id.* Patent Owner states that it is the owner of the challenged patent. Paper 16, 1.

### C. Related Matter

The parties identify *Largan Precision Co. v. Motorola Mobility LLC*, No. 4:21-cv-09138-JSW (N.D. Cal.) as a matter that may affect, or be affected by, a decision in this proceeding. Pet. x; Paper 16, 2.

### D. The Challenged Patent

The '948 patent relates to "an imaging lens system used in a mobile phone camera." Ex. 1001, 1:21–23. The patent describes "there is an increasing demand for compact imaging lenses featuring better image quality." *Id.* at 1:33–34. The '948 patent explains that a "conventional compact lens assembly for mobile phone cameras . . . generally comprises four lens elements." *Id.* at 1:35–38. However, the '948 patent goes on to explain that "the four-element lens has become insufficient for a high-end imaging lens assembly due to the rapid increase in the resolution of mobile phone cameras, the reduction in the pixel size of sensors and the increasing demand for compact lens assemblies featuring better image quality." *Id.* at 1:38–43. Thus, "a need exists in the art for an imaging lens system applicable to high-resolution mobile phone cameras while maintaining a moderate total track length." *Id.* at 1:44–47.

To address this need, the '948 patent describes an image capturing lens assembly comprising five lens elements having specific characteristics

IPR2022-01156
Patent 9,784,948 B2

and properties.  Figure 1 of the '948 patent, reproduced below, illustrates

one embodiment of the '948 patent's image capturing lens assembly.



Figure 1 shows an image lens system comprising five lens elements

including, in order from the object side to the image side:  a plastic first lens

element 100 with positive refractive power having a convex object-side

surface 101 and a concave image-side surface 102 the object-side and

image-side surfaces 101 and 102 being aspheric; a plastic second lens

element 110 with negative refractive power having a convex object-side

surface 111 and a concave image-side surface 112, the object-side and

image-side surfaces 111 and 112 being aspheric; a plastic third lens element

120 with negative refractive power having a convex object-side surface 121

4

IPR2022-01156
Patent 9,784,948 B2

and a concave image-side surface 122, the object-side and image-side surfaces 121 and 122 being aspheric; a plastic fourth lens element 130 with positive refractive power having a concave object-side surface 131 and a convex image-side surface 132, the object-side and image-side surfaces 131 and 132 being aspheric; and a plastic fifth lens element 140 with negative refractive power having a convex object-side surface 141 and a concave image-side surface 142, the object-side and image-side surfaces 141 and 142 being aspheric and each of which being provided with at least one inflection point. *Id.* at 7:9–34. Aperture stop 150 is disposed between an imaged object and the first lens element 10. *Id.* at 7:34–35. The imaging lens system further comprises an IR filter 160 disposed between the image-side surface 142 of the fifth lens element 140 and the image plane 170 and the IR filter 160 has no influence on the focal length of the imaging lens system. *Id.* at 7:36–40.

The '948 patent explains that such an arrangement of optical elements can effectively correct the aberrations to improve image quality of the system, reduce the total track length of the imaging lens system and achieve a wide field of view. *Id.* at 1:66–2:2.

E. *Priority Chain of the '948 Patent*

The '948 Patent issued from U.S. Patent Application No. 15/067,369, filed on March 11, 2016, which claims priority to U.S. Patent Application No. 14/168,809, filed on Jan. 30, 2014, now U.S. Patent No. 9,465,197, which claims priority to U.S. Patent Application No. 13/848,150, filed on Mar. 21, 2013, now U.S. Patent No. 8,736,981, which claims priority to U.S. Patent Application No. 13/433,438 ("the 2012 application") filed on Mar. 29, 2012, now U.S. Patent No. 8,520,324, which claims priority to U.S.

5

IPR2022-01156
Patent 9,784,948 B2

Patent Application No. 12/654,912, filed on Jan. 8, 2010 ("Chen-069"), now

U.S. Patent No. 8,233,224, which claims priority under 35 U.S.C. 119(e) to

Taiwan Application No. 098123694 A, filed on July 14, 2009.

*F. Illustrative Claim*

Of the challenged claims, claims 1, 14, and 23 are independent.

Claim 1 is illustrative of the challenged claims, and reads as follows:

> 1.  An imaging lens system including, in order from an object side to an image side:
>> a first lens element having a concave image-side surface;
>> a second lens element;
>> a third lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric;
>> a fourth lens element with positive refractive power having a convex image-side surface; and
>> a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point;
>> wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system.

Ex. 1001, 12:8–26.

*G. Instituted Ground of Unpatentability*

We instituted trial based on the following ground of unpatentability,

which is the only ground of unpatentability raised in the Petition:

IPR2022-01156
Patent 9,784,948 B2

| Claim(s) Challenged | 35 U.S.C. §[1] | Reference(s)/Basis |
|---|---|---|
| 1–4, 6–16, 18–24, 28, 29 | 102 | Chen-069[2] |

Pet. 4, 41–65.  Petitioner submits in support of its arguments the Declaration of Tom. D. Milster, Ph.D. (Ex. 1003).  Patent Owner submits a declaration of Dr. Milster's from another proceeding in support of arguments we do not reach.

## II.  LEVEL OF ORDINARY SKILL IN THE ART

To determine whether an invention would have been obvious at the time it was made, we consider the level of ordinary skill in the pertinent art at the time of the invention.  *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  In assessing the level of ordinary skill in the art, various factors may be considered, including the "type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field."  *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (citing *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962–63 (Fed. Cir. 1986)).  "[O]ne or more factors may predominate."  *Id.*

In our Decision on Institution, we adopted the definition Petitioner proposes for one having ordinary skill in the art at the time of the invention of the '948 patent.  Dec. on Inst. 12–13.  Namely, we found that one of

---

[1] The Leahy-Smith America Invents Act ("AIA") included revisions to 35 U.S.C. § 102 that became effective on March 16, 2013.  Because the earliest effective filing date in light of our findings below for the '948 patent is after March 16, 2013, we apply the AIA version of the statutory basis for unpatentability.  However, our analysis herein would not change if we apply the pre-AIA version of the statutory basis.

[2] US 2011/0013069 A1, published Jan. 20, 2011 (Ex. 1012, "Chen-069").

IPR2022-01156
Patent 9,784,948 B2

ordinary skill in the art at the time of the invention of the '948 patent would have had "(i) a Bachelor's degree in Physics, Optical Sciences, or equivalent education or training, as well as (ii) approximately three years of experience in designing multi-lens optical systems." *Id.* at 12 (quoting Pet. 13–14 (citing Ex. 1003 ¶ 28)). We also found that "[l]ack of work experience could have been offset by additional education, and vice versa," and that one of ordinary skill in the art "would have understood the fundamentals of optical aberration theory, and understood and used standard techniques for making lenses cheaper and more effective, especially for lens systems used in mobile devices." *Id.* (quoting Pet. 14; Ex. 1003 ¶¶ 28, 30). We also agreed with Petitioner and found that one of ordinary skill in the art "would have known how to use lens design software such as Code V, Oslo, and ZEMAX, and would have taken a lens design course or had equivalent training." *Id.* (quoting Pet. 14; Ex. 1003 ¶ 29). We also agreed with Petitioner and found that one of ordinary skill in the art "would have regularly used such software to create new lens designs, often using pre-existing lens designs as a starting point and then performing routine optimizations to reach a desired design." *Id.* at 12–13 (quoting Pet. 14; Ex. 1003 ¶ 29).

Patent Owner does not identify a level of skill in the art that one would have had at the time of the invention of the '948 patent or identify any shortcoming in Petitioner's formulation. *See* PO Resp. 16–17.

Because Petitioner's definition of the level of skill in the art is consistent with the '948 patent and the asserted prior art, we maintain it for purposes of this Final Written Decision. *See Okajima v. Bourdeau*, 261 F.3d

8

IPR2022-01156
Patent 9,784,948 B2

1350, 1355 (Fed. Cir. 2001); *In re GPAC*, 57 F.3d at 1579; *In re Oelrich*, 579 F.2d 86, 91 (CCPA 1978).

## III. CLAIM CONSTRUCTION

Because the Petition was filed after November 13, 2018, we apply the same claim construction standard that would be used in a civil action under 35 U.S.C. § 282(b), following the standard articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). 37 C.F.R. § 42.100(b) (2019); 83 Fed. Reg. 51,340, 51,340–41, 51,343 (Oct. 11, 2018). In applying such standard, claim terms are generally given their ordinary and customary meaning, as would be understood by a person of ordinary skill in the art, at the time of the invention and in the context of the entire patent disclosure. *Phillips*, 415 F.3d at 1312–13. "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312–17).

Petitioner "contends that no claim terms require specific construction to resolve the unpatentability issues presented" in the Petition, and that it "applies the plain and ordinary meaning of all claim terms." Pet. 22. To that end, Petitioner argues that the plain and ordinary meaning of the challenged independent claims includes lens systems having first and second lens elements with (i) the same refractive power (i.e., both positive or both negative) and (ii) opposite refractive power (i.e., one positive and the other negative). *Id.* at 32–34.

9

IPR2022-01156
Patent 9,784,948 B2

Patent Owner argues that construing the challenged "claims to include first and second lens elements having the same refractive power . . . is improper." PO Resp. 21. According to Patent Owner, one of ordinary skill in the art "would construe the [']948 [p]atent claims to include first and second lens elements in the form of a 'doublet,' which requires the respective lens elements to have **opposite** refractive power, and thus includes only configurations" of "positive-negative" and "negative-positive" for the first and second lens elements, respectively. *Id.* at 20–21. In other words, "[t]he proper construction of the '948 [p]atent claims is that the first and second lens elements may have positive-negative or negative-po[sitive] refractive powers, but would not include first and second lens elements having the same refractive polarity," according to Patent Owner. *Id.* at 26.

Thus, the parties agree that the challenged claims should be construed to encompass at least a lens system having a first lens element with a *negative* refractive power and a second lens element with a *positive* refractive power. *See, e.g.*, Pet. 33; PO Resp. 21. We conclude that such a lens system is consistent with the plain language of the challenged claims. *See, e.g.*, Ex. 1001, 12:8–26, 13:14–38, 14:16–46 (reciting first and second lens elements without reciting a specific refractive power polarity for the independent claims). And we determine that no claim terms require further construction in light of our findings below. *See, e.g.*, *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)) ("[W]e need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy.'").

IPR2022-01156
Patent 9,784,948 B2

## IV. GENERAL PRINCIPLES OF LAW

"In an [*inter partes* review], the petitioner has the burden from the onset to show with particularity why the patent it challenges is unpatentable." *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016) (citing 35 U.S.C. § 312(a)(3) (requiring *inter partes* review petitions to identify "with particularity . . . the evidence that supports the grounds for the challenge to each claim")). This burden of persuasion never shifts to Patent Owner. *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (discussing the burden of proof in *inter partes* review).

A claim is unpatentable under 35 U.S.C. § 102 "if each and every [claim] limitation is found either expressly or inherently in a single prior art reference." *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 851 F.3d 1270, 1273 (Fed. Cir. 2017). "A claim limitation is inherent in the prior art if it is necessarily present in the prior art, not merely probably or possibly present." *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) (citing *Rosco, Inc. v. Mirror Lite, Co.*, 304 F.3d 1373, 1380 (Fed. Cir. 2002)).

## V. ALLEGED ANTICIPATION BY CHEN-069

Petitioner argues that claims 1–4, 6–16, 18–24, 28, and 29 of the '948 patent are anticipated by Chen-069. Pet. 41–65. For the reasons that follow, we determine that Petitioner shows by a preponderance of the evidence that Chen-069 anticipates these claims.

### A. Overview of Chen-069

Chen-069 is the published version of U.S. Application No. 12/654,912 which is an ancestor of the '948 patent. Ex. 1012, codes (10), (21).

11

IPR2022-01156
Patent 9,784,948 B2

Chen-069 was published on January 20, 2011. *Id.* at code (43). Chen-069 shares its disclosure with the '948 patent with only minor differences. For an overview of Chen-069, refer to the above overview of the '948 patent.

  *B. Whether Chen-069 is Prior Art*

  Petitioner argues that the '948 patent does not benefit from the filing date of the 2012 application in its chain because the 2012 application does not support the full breadth of the challenged claims. Pet. 23–40; Pet. Reply 12–22. Thus, according to Petitioner, Chen-069, which was published before the 2012 application, is prior art to the '948 patent even though Chen-069 is a published ancestor application of the '948 patent. Pet. 42–44. For the reasons below, we agree with Petitioner and find that Chen-069 is prior art to the challenged claims of the '948 patent.

  "For a claim to be entitled to the 'the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112.'" *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1373 (Fed. Cir. 2023) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997)). That means "[e]ach application in the chain must therefore 'reasonably convey[ ] to those skilled in the art that the inventor had possession of the [later-claimed] subject matter as of the filing date.'" *Id.* (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)) (second and third alterations in original).

  "One shows that one is 'in possession' of *the invention* by describing *the invention*, with all its claimed limitations." *Lockwood*, 107 F.3d at 1572. "One does that by such descriptive means as words, structures, figures,

12

diagrams, formulas, etc., that fully set forth the claimed invention." *Id.* In some instances, a patentee can rely on information that is well known in the art to satisfy the written description requirement. *Ariad Pharm.*, 598 F.3d at 1351 ("[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology."). Still, "the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id.*

The relevant claim terms first must be construed. *See X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1365 (Fed. Cir. 2014) (Reyna, J., concurring) ("Where the claims have not been properly construed, the full scope of the claim is unknown, thereby rendering baseless any determination of written support in an earlier patent."). Here, as we discuss above, the parties agree that the scope of the challenged claims includes having a first lens element with a *negative* refractive power and a second lens element with a *positive* refractive power. *See supra* Section III.

Next, we look to the four corners of the specification from the perspective of one of ordinary skill in the art. *Ariad Pharms.*, 598 F.3d at 1351. In doing so, we agree with Petitioner and find that the 2012 application only describes lens element systems with a first lens element having a positive refractive power and a second lens element having a negative refractive power. *E.g.*, Pet. 6–11.

IPR2022-01156
Patent 9,784,948 B2

The Summary of the Invention section of the 2012 application repeatedly describes the "present invention" as providing a lens system having "a first lens element with positive refractive power having a convex object-side surface[ and] a second lens element with negative refractive power." Ex. 1005, 2:5–9; *see also id.* at 3:14–19 (same). The Detailed Description of the Preferred Embodiments section likewise describes the "present invention [as] provid[ing] an image lens system including . . . a first lens element with positive refractive power having a convex object-side surface[ and] a second lens element with negative refractive power." *Id.* at 5:9–12; *see also id.* at 8:26–9:3 (same). Similarly, the 2012 application's abstract recites that "[t]his invention provides an imaging lens system including . . . a first lens with positive refractive power having a convex object-side surface[ and] a second lens with negative refractive power." *Id.* at 28:3–6.

In addition, each of the 2012 application's figures that illustrate a lens system in accordance with its invention (i.e., Figures 1, 3, and 5) show that the first lens has a positive refractive power and the second lens has a negative refractive power, and the specification's accompanying text for these figures describes the first and second lenses as such. *Id.* at 12:21–13:1, 15:25–16:10, 18:25–19:10, Figs. 1, 3, 5; *see also id.* at Figs. 7, 9, 11 (providing data tables that show that the first lens has a positive refractive power and the second lens has a negative refractive power based on the given focal length polarity); Ex. 1003 ¶ 67.

In addition, the 2012 application explains the reasons for the polarity of the lenses in the lens system, including for the first and second lens elements:

IPR2022-01156
Patent 9,784,948 B2

> [T]he first lens element has positive refractive power and a convex object-side surface so that the total track length of the imaging lens system can be effectively reduced; the second lens element has negative refractive power so that the chromatic aberration of the system can be favorably corrected; the third lens element may be a lens element with either negative or positive refractive power; the fourth lens element has positive refractive power so that the positive refractive power of the first lens element can be effectively distributed to reduce the sensitivity of the imaging lens system; the fifth lens element with negative refractive power and the fourth lens element with positive refractive power form a telephoto structure, thereby the total track length of the imaging lens system can be effectively reduced.  When the third lens element has negative refractive power, the Petzval Sum of the system can be more effectively corrected, enabling the focal plane to become more flat near the periphery. When the third lens element has positive refractive power, the high order aberrations of the system can be favorably corrected.

Ex. 1005, 5:20–6:9 (emphasis added); *see also id.* at 9:12–26 (similarly describing reasons for lens elements' polarity, including for the first and second lens elements).  In particular, the first lens element has positive refractive power to reduce the total track length and the second lens element has negative refractive power to correct chromatic aberration. *Id.* at 5:20–24.

Moreover, the 2012 application discloses that "the fourth lens element has positive refractive power so that the positive refractive power of the first lens element can be effectively distributed to reduce the sensitivity of the imaging lens system." *Id.* at 5:26–6:2.  In other words, the particular structure for the fourth lens depends on the first lens having positive refractive power. *Id.*  We also note that the 2012 application discloses that "the third lens element may be a lens element with either negative or

positive refractive power," which we view as evidencing that when the refractive power of a lens may have either polarity for its invention, that the 2012 application discloses such. *Id.* at 5:24–25; *see also* Ex. 1003 ¶ 65 n.12 (testifying that a power-agnostic lens element was specified).

In addition, the independent claims filed with the 2012 application each recite "a first lens element with positive refractive power having a convex object-side surface" and "a second lens element with negative refractive power." Ex. 1005, 23 (reciting claim 1), 25 (reciting claim 17).

In sum, we find that the 2012 application only describes lens element systems having a first lens element having a positive refractive power and a second lens element having a negative refractive power. Moreover, in light of the above discussed disclosures in the 2012 application, we find that the inventor of the 2012 application considered that having positive refractive power for the first lens element and negative refractive power for the second lens element to be an essential element of his invention. *See supra.* In addition, we find persuasive Dr. Milster's testimony concerning the 2012 application's disclosures and that one of ordinary skill in the art would have understood "that the defining feature of the first element is that it has positive power, and the defining feature of the second element is that it has negative power." *See* Ex. 1003 ¶¶ 63–68, 70–71. We find this testimony is consistent with the 2012 application.

We find unavailing Patent Owner's argument that a negative-positive configuration is supported because the 2012 application discloses in its last paragraph that "[t]he preferred embodiments depicted above are exemplary and are not intended to limit the scope of the present invention." PO Resp. 31 (quoting Ex. 1005, 22:4–6) (emphasis omitted). The entirety of this

IPR2022-01156
Patent 9,784,948 B2

paragraph reads as follows:

> It is to be noted that TABLES 1–6 (illustrated in Figs. 7–12 respectively) show different data of the different embodiments, however, the data of the different embodiments are obtained from experiments. Therefore, any imaging lens system of the same structure is considered to be within the scope of the present invention even if it uses different data. The preferred embodiments depicted above are exemplary and are not intended to limit the scope of the present invention. TABLE 7 (illustrated in Fig. 13) shows the data of the respective embodiments resulted from the equations.

Ex. 1005, 21:25–22:7. We view the essence of this paragraph as the portion that recites "any imaging lens system *of the same structure* is considered to be within the scope of the present invention even if it uses different data." *Id.* (emphasis added). In other words, particular data values may vary, but the same disclosed structure (e.g., the positive-negative configuration for the first and second lenses) is maintained. *Id.*

Nor do we find that any portion of this paragraph (e.g., "[t]he preferred embodiments depicted above are exemplary and are not intended to limit the scope of the present invention") reasonably conveys that the inventor had possession of a negative-positive configuration for the first and second lenses. *Id.*; *see also D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) (finding insufficient, for the purpose of written description support, boilerplate language at the end of a specification that one of ordinary skill in the art would recognize that certain modifications, permutations, additions and sub-combinations are within the scope of the invention).

We also find unavailing Patent Owner's reliance on *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1301 (Fed. Cir. 2010). PO Resp. 29–

17

IPR2022-01156
Patent 9,784,948 B2

31.  In *Honeywell*, the Federal Circuit found written description support because "the original application also explained that '[i]n the case of the local display 37 using separate cathode ray tubes 51–53 *or other display transducers*,'" and also "stated that '[w]hile specific configurations of the local display . . . 37 have been described, it is understood that the present invention can be applied to a wide variety of display and vision aid devices." *Honeywell*, 609 F.3d at 1301 (alterations in original).  As we discuss above, however, the 2012 application does not disclose implementing its invention with first and second lenses other than in a positive-negative configuration. And as we also discuss above, the 2012 application's boilerplate last paragraph does not suggest changing the lens system's structure or reasonably convey possession of such as change.

We also find unavailing Patent Owner's argument that "[t]he 2012 [a]pplication clearly discloses both telephoto lens systems ([Ex. 1005, 2:19–3:4]) and wide view lens systems ([Ex. 1005, 2:16–18, 3:4–13, 4:6–8]) as different embodiments."  PO Resp. 38–39.  Similarly, we find unavailing Patent Owner's arguments that "[t]he 2012 [a]pplication discloses that an embodiment of the lens system is to provide a wide angle view," and "the 2012 [a]pplication clearly discloses telephoto and wide angle embodiments." *Id.* at 44, 52.  Simply put, there is no separate wide view embodiment, as Patent Owner argues.  Rather, whenever the 2012 application refers to a wide field of view, it is in the context of a disclosed embodiment in which the first lens has *positive* power and the second lens has *negative* power. *See* Ex. 1005, 2:16–18, 3:4–6, 3:11–13, 4:6–8.  For example, for the first disclosed embodiment, in which the first lens has *positive* power and the second lens has *negative* power, the 2012 application discloses that "when

18

the aperture stop is disposed near the third lens element, a wide field of view can be favorably achieved." *Id.* at 3:4–6.

In addition, we find inapposite Patent Owner's argument that it "was well-known that a negative-positive first and second lens element doublet provides a wide-angle lens effect." PO Resp. 32 (citing Ex. 1003 ¶¶ 56, 58). This argument is untethered to the 2012 application or the challenged claims. As we find above, the 2012 application does not disclose a separate wide view embodiment. Patent Owner's reliance on *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) is misplaced for the same reason. PO Resp. 27.

We also find unavailing Patent Owner's argument that given the well-known nature of first and second lens doublet configurations, one of ordinary skill in the art "would have known and understood the '948 [p]atent claims to include a positive-negative first and second lens element doublet to achieve a telephoto effect, and to include a negative-positive first and second lens element doublet to achieve a wide field of view." *Id.* at 32. This argument is incorrectly premised on the 2012 application disclosing a separate wide view embodiment, which it does not. Moreover, Patent Owner provides no expert testimony or other support for this argument, which we find unavailing. *Id.*; *In re Geisler*, 116 F.3d 1465, 1471 (Fed. Cir. 1997) (explaining that attorney arguments and conclusory statements that are unsupported by factual evidence are entitled to little probative value).

We also find unavailing Patent Owner's argument that "[t]he 2012 [a]pplication discloses a preferred manner to achieve either a wide field of view or a telephoto effect by moving the aperture stop, but there is nothing in the 2012 [a]pplication that would have led a skilled artisan to believe that

19

IPR2022-01156
Patent 9,784,948 B2

the varying fields of view can only be achieved by the placement of the aperture stop." PO Resp. 32. This argument also is incorrectly premised on the 2012 application disclosing a separate wide lens embodiment, which it does not. Moreover, this argument is akin to arguing that it would have been obvious instead to employ a negative-positive first and second lens element doublet to achieve a wide field of view—such an argument is improper. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Lockwood*, 107 F.3d at 1572) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.").

We also find unavailing Patent Owner's argument that "the Examiner considered the third and fifth lens elements and their specific features to be the patentable distinctions between the claimed invention and the cited prior art," and that "[t]he specific features of the first and second lens elements, in contrast, were not material to the patentability of the claimed system." PO Resp. 33 (citing Ex. 1002, 211). This argument is inapposite to the question of whether the 2012 application provides written description support for the challenged claims of the '948 patent. Regardless of where novel or patentable features of the '948 patent may lie, the claims include the first and second lens elements as limitations and these limitations must be fully supported by the 2012 application in order for the claim to benefit from the priority date of the 2012 application.

20

IPR2022-01156
Patent 9,784,948 B2

We also find unavailing Patent Owner's argument that "there is no requirement that every aspect of every structure in a claimed device needs to be recited, and it is only where a critical feature is omitted that an issue may arise," as the argument applies here. *Id.* at 33–34 (citations omitted). As we discuss above, in light of disclosures in the 2012 application, we find that the inventor of the 2012 application considered having positive refractive power for the first lens element and negative refractive power for the second lens element to be an essential element of his invention. Thus, the 2012 application "serves to limit the permissible breadth of his later-drafted claims." *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1582 n.7 (Fed. Cir. 1996) (pointing out that the applicant "was free to draft claim[s] broadly (within the limits imposed by the prior art) to exclude the lockout's exact location as a limitation of the claimed invention" only because he "did not consider the precise location of the lockout to be an element of his invention").

We also find unavailing Patent Owner's argument that Dr. Milster "fails to apply all of the knowledge of [one of ordinary skill in the art] in optimizing or modifying a known lens design." PO Resp. 36. Similarly, we find unavailing Patent Owner's numerous arguments directed to what could have been substituted or interchanged with the lens systems of the 2012 application. *See id.* at 36–42. These arguments are incorrectly directed to what would have been obvious in light of the 2012 application's disclosures, rather than addressing what the 2012 application reasonably conveys that the inventor had possession of to one of ordinary skill in the art. *See, e.g.*, *PowerOasis*, 522 F.3d at 1306; *Indivior UK Ltd. v. Dr. Reddy's Labs. S.A.*,

IPR2022-01156
Patent 9,784,948 B2

18 F.4th 1323, 1329 (Fed. Cir. 2021) ("A written description sufficient to
satisfy the requirement of the law requires a statement of an invention, not
an invitation to go on a hunting expedition to patch together after the fact a
synthetic definition of an invention."). We also note that we do not rely on
Dr. Milster's testimony that is not tethered to the 2012 application's
disclosures for evaluating the written description support arguments.

Lastly, the cases that the parties discuss that relate to written
description support in the context of genus and species limitations are not
applicable here for that purpose. These cases include *Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998); *Bilstad v. Wakalopulos*, 386 F.3d 1116
(Fed. Cir. 2004); *Research Corp. Tech. v. Microsoft Corp.*, 627 F.3d 859
(Fed. Cir. 2010); and *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328
(Fed. Cir. 2022). Simply put, the first and second lens elements of the
challenged claims do not involve genus and species issues. "Any given lens
element can have either positive or negative refractive power." Ex. 1003
¶ 49. "[A] lens element of positive power creates the opposite effect from
one having negative power." *Id.* Thus, for two lenses (i.e., the first and
second lens elements), there are four possible independent configurations
where the polarity of each lens is independent of each other. Regardless,
*Gentry Gallery* applies here, and we find that the challenged "claims may be
no broader than the supporting disclosure, and therefore[, the 2012
application's] narrow disclosure will limit claim breadth." *Gentry Gallery*,
134 F.3d at 1480; *see also Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
119 F.3d 1559, 1568 (Fed. Cir. 1997) (stating that the case law does "not
compel the conclusion that a description of a species always constitutes a
description of a genus of which it is a part").

22

In sum, we determine that the 2012 application does not provide written description support for an imaging lens system with a negative refractive power first lens and a positive refractive power second lens. And the agreed scope of the challenged claims includes such a configuration, and thus, the written description of the 2012 application does not support the full breadth of the challenged claims. We therefore determine that the challenged claims of the '948 patent do not benefit from the priority date of the 2012 application. Therefore, we determine that Chen-069 is prior art to the challenged claims of the '948 patent.

### C. Challenged Claim 1

Petitioner argues that Chen-069 discloses claim 1's preamble and the first, second, third, fourth, and fifth lenses as recited in claim 1 by disclosing the following:

> FIG. 1 shows an imaging lens system in accordance with a first embodiment of the present invention, and FIG. 2 shows the aberration curves of the first embodiment of the present invention. The imaging lens system of the first embodiment of the present invention mainly comprises five lens elements including, in order from the object side to the image side: a plastic first lens element 100 with positive refractive power having a convex object-side surface 101 and a concave image-side surface 102, the object-side and image side surfaces 101 and 102 thereof being aspheric; a plastic second lens element 110 with negative refractive power having a convex object-side surface 111 and a concave image side surface 112, the object-side and image-side surfaces 111 and 112 thereof being aspheric; a plastic third lens element 120 with negative refractive power having a convex object side surface 121 and a concave image-side surface 122, the object-side and image-side surfaces 121 and 122 thereof being aspheric; a plastic fourth lens element 130 with positive refractive power having a concave object-side surface 131 and a convex image-side surface 132, the object-side and image-side surfaces 131 and 132 thereof being aspheric; and a

IPR2022-01156
Patent 9,784,948 B2

> plastic fifth lens element 140 with negative refractive power
> having a convex object-side surface 141 and a concave image
> side surface 142, the object-side and image-side surfaces 141 and
> 142 thereof being aspheric, and each of which being provided
> with at least one inflection point; wherein an aperture stop 150 is
> disposed between an imaged object and the first lens element
> 100; wherein the imaging lens system further comprises an IR
> filter 160 disposed between the image side surface 142 of the
> fifth lens element 140 and the image plane 170; and wherein the
> IR filter 160 has no influence on the focal length of the imaging
> lens system.

Pet. 44–47 (citing Ex. 1012 ¶ 53; Figs. 1, 7; Ex. 1003 ¶¶ 86–91).

In addition, Petitioner argues that Chen-069's Figure 1 discloses a five-element imaging lens system in which a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system. *Id.* at 47 (Ex. 1012, Fig. 1; Ex. 1003 ¶ 92). In other words, Chen-069 discloses "wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system," according to Petitioner. *Id.*

After reviewing Petitioner's arguments and evidence, which are not addressed by Patent Owner (*see generally* PO Resp.), we determine that Petitioner demonstrates by a preponderance of the evidence that Chen-069 anticipates claim 1.

### D. Remaining Challenged Claims

Petitioner argues that Chen-069 discloses the limitations recited in claims 2–4, 6–16, 18–24, 28, and 29. Pet. 48–65. Patent Owner does not address Petitioner's arguments directed to these claims. *See generally* PO Resp. 32–34. Based on the evidence and arguments of record, we find that

Petitioner demonstrates by a preponderance of the evidence that Chen-069 anticipates claims 2–4, 6–16, 18–24, 28, and 29.

## VI. JURISDICTION TO ADDRESS § 112 ISSUES

Patent Owner argues that "the Board will exceed its jurisdictional authority if it ultimately finds that the challenged claims lack written description support in the exact same specification as the challenged patent." PO Resp. 60. We disagree. Rather, the Federal Circuit has found that the Board may resolve issues relating to written description support when determining whether challenged claims are entitled to an alleged priority date. *Arthrex*, 35 F.4th at 1344 ("There is no merit to Arthrex's argument that the Board lacked statutory authority to decide whether the '707 application meets the written description requirement."). Moreover, the Federal Circuit has affirmed a finding of the Board that later-drafted claims lacked written description support in the context of a priority dispute despite having a specification identical to an ancestor application's specification. *Indivior*, 18 F.4th at 1325, 1328.

In addition, Patent Owner argues that "the Patent Office already affirmatively found that" the specification supports the challenged claims. PO Resp. 53–54. We disagree. Rather, the Examiner stated that certain "references do not qualify as prior art based upon applicant's perfection of their foreign priority." Ex. 1002, 212. The Examiner also stated the following:

> Applicant is claiming priority to Taiwan application number 098123694 filed July 14, 2009. Applicant has provided a certified translation of this foreign priority in parent application 12/654,912 *and has otherwise perfected this foreign priority.* The foreign priority fully supports all of the claims of the present

IPR2022-01156
Patent 9,784,948 B2

> application and as such applicant is entitled to a priority date of
> July 14, 2009 in terms of applying prior art.

*Id.* at 210–11 (emphasis added). We view these statements from the Examiner as recognizing that the applicant perfected its foreign priority claim, rather than suggesting that the Examiner performed a detailed analysis as to whether the full scope of each of the challenged claims had written description support. *Id.* at 210–12.

Lastly, we disagree with Patent Owner that *Patlex Corp. v. Quigg*, 680 F.Supp. 33 (D.D.C. 1988) applies to this *inter partes* review proceeding. PO Resp. 54–56; PO Sur-reply 17. The *Patlex* decision was rendered by a district court more than twenty years before the AIA statutory framework was enacted. Accordingly, we find that these is no principled basis to conclude that *Patlex* applies here.

## VII.    CONCLUSION[3]

Based on the full record, we determine that Petitioner shows by a preponderance of the evidence that claims 1–4, 6–16, 18–24, 28, and 29 are anticipated by Chen-069.

---

[3] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this decision, we draw Patent Owner's attention to the April 2019 *Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

IPR2022-01156
Patent 9,784,948 B2

| Claim(s) | 35 U.S.C. § | Reference(s)/Basis | Claims Shown Unpatentable | Claims Not Shown Unpatentable |
|---|---|---|---|---|
| 1–4, 6–16, 18–24, 28, 29 | 102 | Chen-069 | 1–4, 6–16, 18–24, 28, 29 | |
| **Overall Outcome** | | | 1–4, 6–16, 18–24, 28, 29 | |

## VIII.  ORDER

In consideration of the foregoing, it is hereby

ORDERED that, pursuant to 35 U.S.C. § 314(a), Petitioner has shown by a preponderance of the evidence that claims 1–4, 6–16, 18–24, 28, and 29 of the '948 patent are unpatentable; and

FURTHER ORDERED that parties to the proceeding seeking judicial review of this Final Written Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2022-01156
Patent 9,784,948 B2

FOR PETITIONER:

Andrew M. Mason
Roy Chamcharas
Michael J. Loy
Frank Morton-Park
Todd M. Siegel
Sara Slabisak
KLARQUIST SPARKMAN, LLP
andrew.mason@klarquist.com
roy.chamcharas@klarquist.com
michael.loy@klarquist.com
frank.morton-park@klarquist.com
todd.siegel@klarquist.com
sara.slabisak@klarquist.com

FOR PATENT OWNER:

Patrick A. Doody
Christopher Kao (*pro hac vice*)
Brock S. Weber (*pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
patrick.doody@pillsburylaw.com
christopher.kao@pillsburylaw.com
brock.weber@pillsburylaw.com



US009784948B2

(12) **United States Patent**  (10) Patent No.: **US 9,784,948 B2**
Chen                           (45) Date of Patent:     **Oct. 10, 2017**

(54) **IMAGING LENS SYSTEM**

(71) Applicant: **LARGAN PRECISION CO., LTD.,** Taichung (TW)

(72) Inventor: **Chun-Shan Chen**, Taichung (TW)

(73) Assignee: **LARGAN PRECISION CO., LTD.,** Taichung (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/067,369**

(22) Filed: **Mar. 11, 2016**

(65) **Prior Publication Data**

US 2016/0195700 A1      Jul. 7, 2016

**Related U.S. Application Data**

(63) Continuation of application No. 14/168,809, filed on Jan. 30, 2014, now Pat. No. 9,465,197, which is a (Continued)

(30) **Foreign Application Priority Data**

Jul. 14, 2009    (TW) ............................... 98123694 A

(51) **Int. Cl.**
    *G02B 13/00*        (2006.01)
    *G02B 9/60*         (2006.01)
    *G02B 13/18*        (2006.01)
    *G02B 27/00*        (2006.01)
    *G02B 3/04*         (2006.01)
    *H04N 5/225*        (2006.01)
(52) **U.S. Cl.**
    CPC ............ *G02B 13/0045* (2013.01); *G02B 9/60* (2013.01); *G02B 13/18* (2013.01); *G02B 27/0025* (2013.01); *H04N 5/225* (2013.01);

*H04N 5/2254* (2013.01); *G02B 3/04* (2013.01); *H04N 5/2253* (2013.01)

(58) **Field of Classification Search**
    CPC ...... G02B 9/60; G02B 13/0045; G02B 13/18; G02B 27/0025
    USPC ......................................... 359/714, 763–770
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

7,443,610 B1    10/2008  Lin et al.
7,710,665 B2     5/2010  Park et al.
(Continued)

FOREIGN PATENT DOCUMENTS

JP        2000-180719      6/2000
JP        2007-298572     11/2007
(Continued)

*Primary Examiner* — Jordan Schwartz
(74) *Attorney, Agent, or Firm* — Locke Lord LLP; Tim Tingkang Xia, Esq.

(57)            **ABSTRACT**

An imaging lens system comprises, in order from an object side to an image side: a first lens element with positive refractive power having a convex object-side surface; a second lens element with refractive power; a third lens element with refractive power having object-side and image-side surfaces being aspheric, at least one surface thereof having at least one inflection point; a fourth lens element with refractive power having a concave object-side surface and a convex image-side surface; a fifth lens element with refractive power having an aspheric object-side surface and an aspheric concave image-side surface, the image-side surface thereof having at least one inflection point.

**29 Claims, 13 Drawing Sheets**



MOTOROLA MOBILITY
EXHIBIT 1001

**US 9,784,948 B2**

Page 2

**Related U.S. Application Data**

continuation of application No. 13/848,150, filed on Mar. 21, 2013, now Pat. No. 8,736,981, which is a continuation of application No. 13/433,438, filed on Mar. 29, 2012, now Pat. No. 8,520,324, which is a continuation of application No. 12/654,912, filed on Jan. 8, 2010, now Pat. No. 8,233,224.

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2009/0122423 A1* | 5/2009 | Park | G02B 9/34 |
| | | | 359/764 |
| 2010/0214467 A1* | 8/2010 | Ohtsu | G02B 9/60 |
| | | | 348/345 |
| 2011/0157725 A1* | 6/2011 | Baba | G02B 13/0045 |
| | | | 359/740 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| KR | 10-0407422 B1 | 11/2003 |
| KR | 10-0835108 B1 | 5/2008 |
| KR | 10-2009-0027330 | 3/2009 |
| KR | 10-2009-0055115 | 6/2009 |
| TW | 095222576 | 6/2007 |

* cited by examiner



# Fig. 1

Case: 24-1540        Document: 12        Page: 80        Filed: 06/14/2024



Fig. 2



Fig. 3

Case: 24-1540     Document: 12     Page: 82     Filed: 06/14/2024



Fig. 4



Fig. 5

Case: 24-1540    Document: 12    Page: 84    Filed: 06/14/2024



Fig. 6

TABLE 1

(Embodiment 1)

f = 5.44 mm, Fno = 2.9, HFOV = 33.0 deg.

| Surface # | | Curvature Radius | Thickness | Material | Index | Abbe # | Focal length |
|---|---|---|---|---|---|---|---|
| 0 | Object | Plano | Infinity | | | | |
| 1 | Ape. Stop | Plano | -0.295 | | | | |
| 2 | Lens 1 | 1.54469 (ASP) | 0.544 | Plastic | 1.544 | 55.9 | 3.85 |
| 3 | | 5.13230 (ASP) | 0.070 | | | | |
| 4 | Lens 2 | 285.35120 (ASP) | 0.300 | Plastic | 1.632 | 23.4 | -8.18 |
| 5 | | 5.07630 (ASP) | 0.408 | | | | |
| 6 | Lens 3 | 2.37564 (ASP) | 0.277 | Plastic | 1.544 | 55.9 | -97.98 |
| 7 | | 2.18085 (ASP) | 0.861 | | | | |
| 8 | Lens4 | -1.60878 (ASP) | 0.492 | Plastic | 1.544 | 55.9 | 7.29 |
| 9 | | -1.26807 (ASP) | 0.100 | | | | |
| 10 | Lens5 | 3.00470 (ASP) | 0.644 | Plastic | 1.544 | 55.9 | -9.2 |
| 11 | | 1.73617 (ASP) | 1.000 | | | | |
| 12 | IR-filter | Plano | 0.300 | Glass | 1.517 | 64.2 | - |
| 13 | | Plano | 0.975 | | | | |
| 14 | Image | Plano | | | | | |

Fig.7

TABLE 2

| Aspheric Coefficients | | | | | |
|---|---|---|---|---|---|
| Surface # | 2 | 3 | 4 | 5 | 6 |
| k    = | 2.14772E-01 | -1.00000E+00 | 3.63116E+04 | 8.10223E+00 | -1.00000E+00 |
| A4 = | -1.31489E-02 | -8.93237E-02 | -1.04367E-02 | 5.70855E-02 | -1.01292E-01 |
| A6 = | -1.47658E-02 | 2.01551E-02 | 9.85187E-02 | 1.43963E-01 | -2.43027E-02 |
| A8 = | -5.67815E-03 | 3.53580E-02 | -3.99988E-02 | -1.41282E-01 | 8.35451E-03 |
| A10= | 2.51805E-03 | -3.83556E-02 | 2.33400E-02 | 1.01047E-01 | -1.95940E-03 |
| A12= | -2.21901E-02 | | | | -8.61299E-03 |
| A14= | | | | | 1.80139E-03 |
| A16= | | | | | -7.42997E-04 |
| Surface # | 7 | 8 | 9 | 10 | 11 |
| k    = | -1.00000E+00 | -1.00000E+00 | -1.00000E+00 | -1.87192E+01 | -9.57921E+00 |
| A4 = | -7.49611E-02 | 6.76904E-02 | 7.92341E-02 | -3.40218E-02 | -4.40404E-02 |
| A6 = | -2.73159E-02 | -2.41658E-02 | -2.37275E-02 | 5.54721E-03 | 9.60671E-03 |
| A8 = | 1.38402E-02 | -5.78439E-03 | 5.08192E-03 | -3.22066E-04 | -2.02313E-03 |
| A10= | -6.47005E-03 | 8.16669E-03 | 1.03756E-03 | -1.52799E-05 | 2.30078E-04 |
| A12= | | -3.48727E-03 | -4.41160E-04 | | -9.93068E-06 |
| A14= | | | | | -2.91448E-07 |

# Fig.8

U.S. Patent          Oct. 10, 2017          Sheet 9 of 13          US 9,784,948 B2

**TABLE 3**

(Embodiment 2)

f = 5.46 mm, Fno = 2.9, HFOV = 33.0 deg.

| Surface # | | Curvature Radius | Thickness | Material | Index | Abbe # | Focal length |
|---|---|---|---|---|---|---|---|
| 0 | Object | Plano | Infinity | | | | |
| 1 | Ape. Stop | Plano | -0.251 | | | | |
| 2 | Lens 1 | 1.63182 (ASP) | 0.555 | Plastic | 1.544 | 55.9 | 3.85 |
| 3 | | 6.51830 (ASP) | 0.070 | | | | |
| 4 | Lens 2 | 100.00000 (ASP) | 0.300 | Plastic | 1.632 | 23.4 | -7.55 |
| 5 | | 4.54780 (ASP) | 0.411 | | | | |
| 6 | Lens 3 | 2.62599 (ASP) | 0.326 | Plastic | 1.632 | 23.4 | 52.09 |
| 7 | | 2.71644 (ASP) | 0.817 | | | | |
| 8 | Lens4 | -1.25296 (ASP) | 0.401 | Plastic | 1.544 | 55.9 | 13.72 |
| 9 | | -1.19387 (ASP) | 0.100 | | | | |
| 10 | Lens5 | 2.85295 (ASP) | 0.738 | Plastic | 1.544 | 55.9 | -15.02 |
| 11 | | 1.92197 (ASP) | 1.000 | | | | |
| 12 | IR-filter | Plano | 0.300 | Glass | 1.517 | 64.2 | - |
| 13 | | Plano | 0.953 | | | | |
| 14 | Image | Plano | | | | | |

Fig.9

U.S. Patent          Oct. 10, 2017        Sheet 10 of 13          US 9,784,948 B2

**TABLE 4**

| Aspheric Coefficients | | | | |
|---|---|---|---|---|
| Surface # | 2 | 3 | 4 | 5 | 6 |
| k    = | 1.83520E-01 | -1.00000E+00 | -1.00000E+00 | 1.75322E+01 | -1.00000E+00 |
| A4 = | -2.19906E-02 | -9.46773E-02 | -2.35168E-04 | 4.30045E-02 | -8.07699E-02 |
| A6 = | -7.91364E-03 | 6.75602E-03 | 7.60931E-02 | 8.85976E-02 | -7.48881E-03 |
| A8 = | -3.74236E-02 | 2.76996E-03 | -3.97230E-02 | -7.08086E-02 | -2.20195E-02 |
| A10= | 1.58336E-02 | -1.23943E-02 | 2.93922E-02 | 2.61251E-02 | 3.54907E-02 |
| A12 = | -2.19436E-02 | | | | -2.45503E-02 |
| A14 = | | | | | 1.71430E-03 |
| A16 = | | | | | -8.61338E-04 |
| Surface # | 7 | 8 | 9 | 10 | 11 |
| k    = | -1.00000E+00 | -1.00000E+00 | -1.00000E+00 | -1.57576E+01 | -1.16295E+01 |
| A4 = | -5.94929E-02 | 1.43139E-01 | 1.22717E-01 | -3.39031E-02 | -4.10434E-02 |
| A6 = | -3.56226E-02 | -4.97493E-02 | -1.62014E-02 | 1.03873E-02 | 9.73370E-03 |
| A8 = | 2.31795E-02 | -1.03685E-02 | 2.20416E-03 | -1.57303E-03 | -1.96225E-03 |
| A10= | -1.05164E-02 | 1.15780E-02 | -8.47082E-04 | 7.18402E-05 | 2.28257E-04 |
| A12= | | -3.81329E-03 | 8.10332E-05 | | -1.25631E-05 |
| A14= | | | | | -1.45241E-07 |

# Fig.10

**TABLE 5**

(Embodiment 3)

f = 5.47 mm, Fno = 2.90, HFOV = 33.0 deg.

| Surface # | | Curvature Radius | Thickness | Material | Index | Abbe # | Focal length |
|---|---|---|---|---|---|---|---|
| 0 | Object | Plano | Infinity | | | | |
| 1 | Ape. Stop | Plano | -0.251 | | | | |
| 2 | Lens 1 | 1.59122 (ASP) | 0.554 | Plastic | 1.544 | 55.9 | 3.76 |
| 3 | | 6.27730 (ASP) | 0.050 | | | | |
| 4 | Lens 2 | 95.15520 (ASP) | 0.300 | Plastic | 1.632 | 23.4 | -7.19 |
| 5 | | 4.32910 (ASP) | 0.459 | | | | |
| 6 | Lens 3 | 2.66560 (ASP) | 0.327 | Plastic | 1.632 | 23.4 | 68.14 |
| 7 | | 2.70650 (ASP) | 0.810 | | | | |
| 8 | Lens4 | -1.28622 (ASP) | 0.395 | Plastic | 1.544 | 55.9 | 14.70 |
| 9 | | -1.22799 (ASP) | 0.100 | | | | |
| 10 | Lens5 | 2.61083 (ASP) | 0.733 | Plastic | 1.530 | 55.8 | -17.37 |
| 11 | | 1.83624 (ASP) | 1.000 | | | | |
| 12 | IR-filter | Plano | 0.300 | Glass | 1.517 | 64.2 | - |
| 13 | | Plano | 0.942 | | | | |
| 14 | Image | Plano | | | | | |

Fig.11

TABLE 6

| Aspheric Coefficients | | | | |
|---|---|---|---|---|
| Surface # | 2 | 3 | 4 | 5 | 6 |
| k = | 2.09651E-01 | -1.00000E+00 | -1.00000E+00 | 9.99772E+00 | -1.00000E+00 |
| A4 = | -1.77930E-02 | -8.72936E-02 | -9.52488E-04 | 4.97902E-02 | -8.71676E-02 |
| A6 = | -1.49198E-02 | 1.18932E-02 | 8.64198E-02 | 1.02616E-01 | -1.22907E-02 |
| A8 = | -2.16321E-02 | 2.19445E-02 | -1.97815E-02 | -6.24973E-02 | -2.13884E-02 |
| A10= | 5.06499E-03 | -3.50593E-02 | 7.13718E-03 | 3.79381E-02 | 3.41199E-02 |
| A12 = | -2.28246E-02 | | | | -2.09784E-02 |
| A14 = | | | | | 2.29279E-03 |
| A16 = | | | | | -8.61338E-04 |
| Surface # | 7 | 8 | 9 | 10 | 11 |
| k = | -1.00000E+00 | -1.00000E+00 | -1.00000E+00 | -1.30015E+01 | -1.01574E+01 |
| A4 = | -6.14819E-02 | 1.59512E-01 | 1.25998E-01 | -3.70522E-02 | -4.15102E-02 |
| A6 = | -4.04836E-02 | -5.11615E-02 | -1.57374E-02 | 1.02084E-02 | 9.52140E-03 |
| A8 = | 2.31102E-02 | -1.19922E-02 | 1.57246E-03 | -1.26222E-03 | -1.93210E-03 |
| A10= | -8.57116E-03 | 1.23102E-02 | -1.30371E-03 | 2.99868E-05 | 2.22574E-04 |
| A12= | | -4.30806E-03 | 1.91832E-04 | | -9.32854E-06 |
| A14= | | | | | -5.31861E-07 |

Fig.12

**TABLE 7**

| | Embodiment 1 | Embodiment 2 | Embodiment 3 |
|---|---|---|---|
| f | 5.44 | 5.46 | 5.47 |
| Fno | 2.9 | 2.9 | 2.9 |
| HFOV | 33.0 | 33.0 | 33.0 |
| V1-V2 | 32.5 | 32.5 | 32.5 |
| \|V2-V3\| | 32.5 | 0.0 | 0.0 |
| f/f1 | 1.41 | 1.42 | 1.45 |
| f4/f5 | -0.79 | -0.91 | -0.85 |
| R1/f | 0.28 | 0.30 | 0.29 |
| R4/f | 0.93 | 0.83 | 0.79 |
| Ro/Ri | 1.09 | 0.97 | 0.98 |
| | 1.27 | 1.05 | 1.05 |
| | 1.73 | 1.48 | 1.42 |
| (T12/f)*100 | 1.29 | 1.28 | 0.91 |
| TTL/ImgH | 1.66 | 1.66 | 1.66 |

# Fig.13

US 9,784,948 B2

1

# IMAGING LENS SYSTEM

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is a Continuation Application of U.S. application Ser. No. 14/168,809 filed on Jan. 30, 2014, which is a Continuation Application of U.S. application Ser. No. 13/848,150 filed on Mar. 21, 2013, now patented, which is a Continuation Application of U.S. application Ser. No. 13/433,438 filed on Mar. 29, 2012, now patented, which is a Continuation Application of U.S. application Ser. No. 12/654,912 filed on Jan. 8, 2010, now patented and claims priority under 35 U.S.C. 119(e) to Taiwan Application Serial No. 098123694 filed on Jul. 14, 2009, the entire contents of which are incorporated by reference herein.

## BACKGROUND OF THE INVENTION

Field of the Invention

The present invention relates to an imaging lens system, and more particularly, to an imaging lens system used in a mobile phone camera.

Description of the Prior Art

In recent years, with the popularity of mobile phone cameras, the demand for compact imaging lenses is increasing, and the sensor of a general photographing camera is none other than CCD (charge coupled device) or CMOS device (Complementary Metal Oxide Semiconductor device). Furthermore, as advanced semiconductor manufacturing technology has allowed the pixel size of sensors to be reduced and the resolution of compact imaging lenses has gradually increased, there is an increasing demand for compact imaging lenses featuring better image quality.

A conventional compact lens assembly for mobile phone cameras, such as the four lens element assembly disclosed in U.S. Pat. No. 7,365,920, generally comprises four lens elements. However, the four-element lens has become insufficient for a high-end imaging lens assembly due to the rapid increase in the resolution of mobile phone cameras, the reduction in the pixel size of sensors and the increasing demand for compact lens assemblies featuring better image quality. As there is an ongoing trend toward compact yet powerful electronic products, a need exists in the art for an imaging lens system applicable to high-resolution mobile phone cameras while maintaining a moderate total track length.

## SUMMARY OF THE INVENTION

The present invention provides an imaging lens system including, in order from the object side to the image side: a first lens element with positive refractive power having a convex object-side surface; a second lens element with negative refractive power; a third lens element having a concave image-side surface; a fourth lens element with positive refractive power; a fifth lens element with negative refractive power having a concave image-side surface, at least one surface thereof being provided with at least one inflection point; and an aperture stop disposed between an imaged object and the third lens element; wherein the on-axis spacing between the first lens element and the second lens element is T12, the focal length of the imaging lens system is f, and they satisfy the relation: 0.5<(T12/f)×100<15.

Such an arrangement of optical elements can effectively correct the aberrations to improve image quality of the

2

system, reduce the total track length of the imaging lens system and achieve a wide field of view.

In the aforementioned imaging lens system, the first lens element provides a positive refractive power, and the aperture stop is disposed near the object side of the imaging lens system, thereby the total track length of the imaging lens system can be reduced effectively. The aforementioned arrangement also enables the exit pupil of the imaging lens system to be positioned far away from the image plane, thus light will be projected onto the electronic sensor at a nearly perpendicular angle, and this is the telecentric feature of the image side. The telecentric feature is very important to the photosensitive power of the current solid-state sensor as it can improve the photosensitivity of the sensor to reduce the probability of the occurrence of shading. Moreover, the inflection point provided on the fifth lens element can effectively reduce the angle at which the light is projected onto the sensor from the off-axis field so that the off-axis aberrations can be further corrected. In addition, when the aperture stop is disposed near the third lens element, a wide field of view can be favorably achieved. Such an aperture stop placement facilitates the correction of the distortion and chromatic aberration of magnification, thereby the sensitivity of the imaging lens system can be effectively reduced. In other words, when the aperture stop is disposed near the imaged object, the telecentric feature is emphasized and enables a shorter total track length. When the aperture stop is disposed near the third lens element, the emphasis is on the wide field of view so that the sensitivity of the imaging lens system can be effectively reduced.

The present invention provides another imaging lens system including, in order from the object side to the image side: a first lens element with positive refractive power having a convex object-side surface; a second lens element with negative refractive power; a third lens element with negative refractive power; a fourth lens element with positive refractive power having a concave object-side surface and a convex image-side surface; a fifth lens element with negative refractive power having a concave image-side surface, at least one surface thereof being provided with at least one inflection point; and an aperture stop disposed between an imaged object and the third lens element; wherein the on-axis spacing between the first lens element and the second lens element is T12, the focal length of the imaging lens system is f, and they satisfy the relation: 0.5<(T12/f)×100<15.

In the aforementioned imaging lens system, the third lens element has negative refractive power so that the Petzval Sum of the system can be effectively corrected, enabling the focal plane to become more flat near the periphery; the fourth lens element has a concave object-side surface and a convex image-side surface so that the astigmatism of the system can be effectively corrected. Moreover, when the aperture stop is disposed near the object side, the telecentric feature is emphasized and enables a shorter total track length. When the aperture stop is disposed near the third lens element, the emphasis is on the wide field of view so that the sensitivity of the imaging lens system can be effectively reduced.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows an imaging lens system in accordance with a first embodiment of the present invention.

FIG. 2 shows the aberration curves of the first embodiment of the present invention.

US 9,784,948 B2

3

FIG. **3** shows an imaging lens system in accordance with a second embodiment of the present invention.

FIG. **4** shows the aberration curves of the second embodiment of the present invention.

FIG. **5** shows an imaging lens system in accordance with a third embodiment of the present invention.

FIG. **6** shows the aberration curves of the third embodiment of the present invention.

FIG. **7** is TABLE 1 which lists the optical data of the first embodiment.

FIG. **8** is TABLE 2 which lists the aspheric surface data of the first embodiment.

FIG. **9** is TABLE 3 which lists the optical data of the second embodiment.

FIG. **10** is TABLE 4 which lists the aspheric surface data of the second embodiment.

FIG. **11** is TABLE 5 which lists the optical data of the third embodiment.

FIG. **12** is TABLE 6 which lists the aspheric surface data of the third embodiment.

FIG. **13** is TABLE 7 which lists the data of the respective embodiments resulted from the equations.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention provides an imaging lens system including, in order from the object side to the image side: a first lens element with positive refractive power having a convex object-side surface; a second lens element with negative refractive power; a third lens element having a concave image-side surface; a fourth lens element with positive refractive power; a fifth lens element with negative refractive power having a concave image-side surface, at least one surface thereof being provided with at least one inflection point; and an aperture stop disposed between an imaged object and the third lens element; wherein the on-axis spacing between the first lens element and the second lens element is T12, the focal length of the imaging lens system is f, and they satisfy the relation: $0.5 < (T12/f) \times 100 < 15$.

In the aforementioned imaging lens system, the first lens element has positive refractive power and a convex object-side surface so that the total track length of the imaging lens system can be effectively reduced; the second lens element has negative refractive power so that the chromatic aberration of the system can be favorably corrected; the third lens element may be a lens element with either negative or positive refractive power; the fourth lens element has positive refractive power so that the positive refractive power of the first lens element can be effectively distributed to reduce the sensitivity of the imaging lens system; the fifth lens element with negative refractive power and the fourth lens element with positive refractive power form a telephoto structure, thereby the total track length of the imaging lens system can be effectively reduced. When the third lens element has negative refractive power, the Petzval Sum of the system can be more effectively corrected, enabling the focal plane to become more flat near the periphery. When the third lens element has positive refractive power, the high order aberrations of the system can be favorably corrected.

In the aforementioned imaging lens system, the on-axis spacing between the first lens element and the second lens element is T12, the focal length of the imaging lens system is f, and they satisfy the relation: $0.5 < (T12/f) \times 100 < 15$. The above relation can prevent the astigmatism from becoming too large.

4

In the aforementioned imaging lens system, it is preferable that the second lens element has a concave image-side surface so as to effectively lengthen the back focal length of the imaging lens system, thereby providing sufficient space between the fifth lens element and the image plane to accommodate other components.

In the aforementioned imaging lens system, it is preferable that the third lens element has a convex object-side surface so that the high order aberrations of the system can be favorably corrected to improve the image quality. Preferably, the fourth lens element has a concave object-side surface and a convex image-side surface so that the astigmatism of the system can be effectively corrected.

In the aforementioned imaging lens system, the Abbe number of the first lens element is V1, the Abbe number of the second lens element is V2, and they preferably satisfy the relation: $V1 - V2 > 20$, thereby the chromatic aberration can be effectively corrected. And it will be more preferable that V1 and V2 satisfy the relation: $V1 - V2 > 30$.

In the aforementioned imaging lens system, the focal length of the imaging lens system is f, the focal length of the first lens element is f1, and they preferably satisfy the relation: $1.0 < f/f1 < 1.8$. When the above relation is satisfied, the refractive power of the first lens element is more balanced so that the total track length of the system can be effectively reduced. The above relation also prevents the high order spherical aberration from becoming too large, so that the image quality can be improved. And it will be more preferable that f and f1 satisfy the relation: $1.2 < f/f1 < 1.6$.

In the aforementioned imaging lens system, the focal length of the fourth lens element is f4, the focal length of the fifth lens element is f5, and they preferably satisfy the relation: $-1.5 < f4/f5 < -0.5$. The above relation ensures the telephoto structure formed by the fourth and fifth lens elements and facilitates reducing the total track length of the system.

In the aforementioned imaging lens system, it is preferable that, of the first, fourth and fifth lens elements, all lens elements which are meniscus in shape satisfy the relation: $0.5 < R_o / R_i < 2.0$, wherein $R_o$ represents the radius of curvature of the object-side surface of the meniscus lens element and $R_i$ represents the radius of curvature of the image-side surface of the meniscus lens element. The above relation effectively reduces the sensitivity of the system by preventing the refractive power of the meniscus lens elements from becoming too large.

In the aforementioned imaging lens system, the radius of curvature of the object-side surface of the first lens element is R1, the focal length of the imaging lens system is f, and they preferably satisfy the relation: $0.2 < R1/f < 0.4$. When the above relation is satisfied, the total track length of the imaging lens system can be effectively reduced. The above relation also prevents the high order aberrations from becoming too large.

In the aforementioned imaging lens system, the aperture stop is disposed between the imaged object and the first lens element so that the telecentric feature is emphasized, resulting in a shorter total track length.

The aforementioned imaging lens system further comprises an electronic sensor on which an object is imaged. The on-axis spacing between the object-side surface of the first lens element and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and they preferably satisfy the relation: $TTL/ImgH < 2.0$. The above relation enables the imaging lens system to maintain a compact form so that it can be equipped in compact portable electronic products.

US 9,784,948 B2

5

In the aforementioned imaging lens system, the radius of curvature of the image-side surface of the second lens element is R4, the focal length of the imaging lens system is f, and they preferably satisfy the relation: 0.7<R4/f<1.2. When the above relation is satisfied, the chromatic aberration of the system can be effectively corrected. The above relation also prevents the back focal length of the imaging lens system from becoming too long so that the system can maintain a compact form.

In the aforementioned imaging lens system, the Abbe number of the second lens element is V2, the Abbe number of the third lens element is V3, and they preferably satisfy the relation: |V2−V3|<15, thereby the chromatic aberration of the system can be effectively corrected.

The present invention provides another imaging lens system including, in order from the object side to the image side: a first lens element with positive refractive power having a convex object-side surface; a second lens element with negative refractive power; a third lens element with negative refractive power; a fourth lens element with positive refractive power having a concave object-side surface and a convex image-side surface; a fifth lens element with negative refractive power having a concave image-side surface, at least one surface thereof being provided with at least one inflection point; and an aperture stop disposed between an imaged object and the third lens element; wherein the on-axis spacing between the first lens element and the second lens element is T12, the focal length of the imaging lens system is f, and they satisfy the relation: 0.5<(T12/f)×100<15.

In the aforementioned imaging lens system, the first lens element has positive refractive power and a convex object-side surface so that the total track length of the imaging lens system can be effectively reduced; the second lens element has negative refractive power so that the chromatic aberration of the system can be favorably corrected; the third lens element has negative refractive power so that the Petzval Sum of the system can be more effectively corrected, enabling the focal plane to become more flat near the periphery; the fourth lens element has positive refractive power so that the positive refractive power of the first lens element can be effectively distributed to reduce the sensitivity of the imaging lens system, and the concave object-side surface and the convex image-side surface thereof facilitate the correction of the astigmatism of the system; the fifth lens element with negative refractive power and the fourth lens element with positive refractive power form a telephoto structure, thereby the total track length of the imaging lens system can be effectively reduced.

In the aforementioned imaging lens system, the on-axis spacing between the first lens element and the second lens element is T12, the focal length of the imaging lens system is f, and they satisfy the relation: 0.5<(T12/f)×100<15. The above relation can prevent the astigmatism from becoming too large.

In the aforementioned imaging lens system, it is preferable that the second lens element has a concave image-side surface so as to effectively lengthen the back focal length of the imaging lens system, thereby providing sufficient space between the fifth lens element and the image plane to accommodate other components.

In the aforementioned imaging lens system, it is preferable that the third lens element has a convex object-side surface and a concave image-side surface so that the high order aberrations of the system can be favorably corrected to improve the image quality.

6

In the aforementioned imaging lens system, the Abbe number of the first lens element is V1, the Abbe number of the second lens element is V2, and they preferably satisfy the relation: V1−V2>30, thereby the chromatic aberration can be effectively corrected.

In the aforementioned imaging lens system, the focal length of the imaging lens system is f, the focal length of the first lens element is f1, and they preferably satisfy the relation: 1.0<f/f1<1.8. When the above relation is satisfied, the refractive power of the first lens element is more balanced so that the total track length of the system can be effectively reduced. The above relation also prevents the high order spherical aberration from becoming too large, so that the image quality can be improved. And it will be more preferable that f and f1 satisfy the relation: 1.2<f/f1<1.6.

In the aforementioned imaging lens system, the focal length of the fourth lens element is f4, the focal length of the fifth lens element is f5, and they preferably satisfy the relation: −1.5<f4/f5<−0.5. The above relation ensures the telephoto structure formed by the fourth and fifth lens elements and facilitates reducing the total track length of the system.

In the aforementioned imaging lens system, it is preferable that, of the third, fourth and fifth lens elements, all elements which are meniscus in shape satisfy the relation: $0.5<R_o/R_i<2.0$, wherein $R_o$ represents the radius of curvature of the object-side surface of the meniscus lens element and $R_i$ represents the radius of curvature of the image-side surface of the meniscus lens element. The above relation effectively reduces the sensitivity of the system by preventing the refractive power of the meniscus lens elements from becoming too large.

In the aforementioned imaging lens system, the radius of curvature of the object-side surface of the first lens element is R1, the focal length of the imaging lens system is f, and they preferably satisfy the relation: 0.2<R1/f<0.4. When the above relation is satisfied, the total track length of the imaging lens system can be effectively reduced. The above relation also prevents the high order aberrations from becoming too large.

In the aforementioned imaging lens system, the aperture stop is disposed between the imaged object and the first lens element so that the telecentric feature is emphasized, resulting in a shorter total track length.

The aforementioned imaging lens system further comprises an electronic sensor on which an object is imaged. The on-axis spacing between the object-side surface of the first lens element and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and they preferably satisfy the relation: TTL/ImgH<2.0. The above relation enables the imaging lens system to maintain a compact form so that it can be equipped in compact portable electronic products.

In the present imaging lens system, the lens elements can be made of glass or plastic material. If the lens elements are made of glass, there is more freedom in distributing the refractive power of the system. If plastic material is adopted to produce lens elements, the production cost will be reduced effectively. Additionally, the surfaces of the lens elements can be aspheric and easily made into non-spherical profiles, allowing more design parameter freedom which can be used to reduce aberrations and the number of the lens elements, so that the total track length of the imaging lens system can be reduced effectively.

In the present imaging lens system, if a lens element has a convex surface, it means the portion of the surface proximate to the optical axis is convex; if a lens element has

7

a concave surface, it means the portion of the surface proximate to the optical axis is concave.

Preferred embodiments of the present invention will be described in the following paragraphs by referring to the accompanying drawings.

FIG. 1 shows an imaging lens system in accordance with a first embodiment of the present invention, and FIG. 2 shows the aberration curves of the first embodiment of the present invention. The imaging lens system of the first embodiment of the present invention mainly comprises five lens elements including, in order from the object side to the image side: a plastic first lens element 100 with positive refractive power having a convex object-side surface 101 and a concave image-side surface 102, the object-side and image-side surfaces 101 and 102 thereof being aspheric; a plastic second lens element 110 with negative refractive power having a convex object-side surface 111 and a concave image-side surface 112, the object-side and image-side surfaces 111 and 112 thereof being aspheric; a plastic third lens element 120 with negative refractive power having a convex object-side surface 121 and a concave image-side surface 122, the object-side and image-side surfaces 121 and 122 thereof being aspheric; a plastic fourth lens element 130 with positive refractive power having a concave object-side surface 131 and a convex image-side surface 132, the object-side and image-side surfaces 131 and 132 thereof being aspheric; and a plastic fifth lens element 140 with negative refractive power having a convex object-side surface 141 and a concave image-side surface 142, the object-side and image-side surfaces 141 and 142 thereof being aspheric, and each of which being provided with at least one inflection point; wherein an aperture stop 150 is disposed between an imaged object and the first lens element 100; wherein the imaging lens system further comprises an IR filter 160 disposed between the image-side surface 142 of the fifth lens element 140 and the image plane 170; and wherein the IR filter 160 has no influence on the focal length of the imaging lens system.

The equation of the aspheric surface profiles is expressed as follows:

$$X(Y) = (Y^2/R)/(l + sqrt(1-(1+k)*(Y/R)^2)) + \sum_i (Ai)*(Y^i)$$

wherein:

X: the height of a point on the aspheric surface at a distance Y from the optical axis relative to the tangential plane at the aspheric surface vertex;

Y: the distance from the point on the curve of the aspheric surface to the optical axis;

k: the conic coefficient;

Ai: the aspheric coefficient of order i.

In the first embodiment of the present imaging lens system, the focal length of the imaging lens system is f, and it satisfies the relation: f=5.44.

In the first embodiment of the present imaging lens system, the f-number of the imaging lens system is Fno, and it satisfies the relation: Fno=2.9.

In the first embodiment of the present imaging lens system, half of the field of view of the imaging lens system is HFOV, and it satisfies the relation: HFOV=33.0 degrees.

In the first embodiment of the present imaging lens system, the on-axis spacing between the first lens element

8

100 and the second lens element 110 is T12, the focal length of the imaging lens system is f, and they satisfy the relation: (T12/f)×100=1.29.

In the first embodiment of the present imaging lens system, the Abbe number of the first lens element 100 is V1, the Abbe number of the second lens element 110 is V2, and they satisfy the relation: V1−V2=32.5.

In the first embodiment of the present imaging lens system, the focal length of the imaging lens system is f, the focal length of the first lens element 100 is f1, and they satisfy the relation: f/f1=1.41.

In the first embodiment of the present imaging lens system, the focal length of the fourth lens element 130 is f4, the focal length of the fifth lens element 140 is f5, and they satisfy the relation: f4/f5=−0.79.

In the first embodiment of the present imaging lens system, each of the third lens element 120, the fourth lens element 130 and the fifth lens element 140 is a meniscus lens element, wherein $R_o$ represents the radius of curvature of the object-side surface of the meniscus lens element, $R_i$ represents the radius of curvature of the image-side surface of the meniscus lens element, and they satisfy the relations:

$R_o/R_i$=1.09 (the third lens element 120),

$R_o/R_i$=1.27 (the fourth lens element 130),

$R_o/R_i$=1.73 (the fifth lens element 140).

In the first embodiment of the present imaging lens system, the radius of curvature of the object-side surface 101 of the first lens element 100 is R1, the focal length of the imaging lens system is f, and they satisfy the relation: R1/f=0.28.

In the first embodiment of the present imaging lens system, an electronic sensor on the image plane 170 is provided for the image formation of the imaged object. The distance on the optical axis between the object-side surface 101 of the first lens element 100 and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and they satisfy the relation: TTL/ImgH=1.66.

In the first embodiment of the present imaging lens system, the radius of curvature of the image-side surface 112 of the second lens element 110 is R4, the focal length of the imaging lens system is f, and they satisfy the relation: R4/f=0.93.

In the first embodiment of the present imaging lens system, the Abbe number of the second lens element 110 is V2, the Abbe number of the third lens element 120 is V3, and they satisfy the relation: |V2−V3|=32.5.

The detailed optical data of the first embodiment is shown in FIG. 7 (TABLE 1), and the aspheric surface data is shown in FIG. 8 (TABLE 2), wherein the units of the radius of curvature, the thickness and the focal length are expressed in mm, and HFOV is half of the maximal field of view.

FIG. 3 shows an imaging lens system in accordance with a second embodiment of the present invention, and FIG. 4 shows the aberration curves of the second embodiment of the present invention. The imaging lens system of the second embodiment of the present invention mainly comprises five lens elements including, in order from the object side to the image side: a plastic first lens element 300 with positive refractive power having a convex object-side surface 301 and a concave image-side surface 302, the object-side and image-side surfaces 301 and 302 thereof being aspheric; a plastic second lens element 310 with negative refractive power having a convex object-side surface 311 and a con-

US 9,784,948 B2

9

cave image-side surface **312**, the object-side and image-side surfaces **311** and **312** thereof being aspheric; a plastic third lens element **320** with positive refractive power having a convex object-side surface **321** and a concave image-side surface **322**, the object-side and image-side surfaces **321** and **322** thereof being aspheric; a plastic fourth lens element **330** with positive refractive power having a concave object-side surface **331** and a convex image-side surface **322**, the object-side and image-side surfaces **331** and **332** thereof being aspheric; and a plastic fifth lens element **340** with negative refractive power having a convex object-side surface **341** and a concave image-side surface **342**, the object-side and image-side surfaces **341** and **342** thereof being aspheric, and each of which being provided with at least one inflection point; wherein an aperture stop **350** is disposed between an imaged object and the first lens element **300**; wherein the imaging lens system further comprises an IR filter **360** disposed between the image-side surface **342** of the fifth lens element **340** and the image plane **370**; and wherein the IR filter **360** has no influence on the focal length of the imaging lens system.

The equation of the aspheric surface profiles of the second embodiment has the same format as that of the first embodiment.

In the second embodiment of the present imaging lens system, the focal length of the imaging lens system is f, and it satisfies the relation: f=5.46.

In the second embodiment of the present imaging lens system, the f-number of the imaging lens system is Fno, and it satisfies the relation: Fno=2.9.

In the second embodiment of the present imaging lens system, half of the field of view of the imaging lens system is HFOV, and it satisfies the relation: HFOV=33.0 degrees.

In the second embodiment of the present imaging lens system, the on-axis spacing between the first lens element **300** and the second lens element **310** is T12, the focal length of the imaging lens system is f, and they satisfy the relation: (T12/f)×100=1.28.

In the second embodiment of the present imaging lens system, the Abbe number of the first element **300** is V1, the Abbe number of the second lens element **310** is V2, and they satisfy the relation: V1−V2=32.5.

In the second embodiment of the present imaging lens system, the focal length of the imaging lens system is f, the focal length of the first lens element **300** is f1, and they satisfy the relation: f/f1=1.42.

In the second embodiment of the present imaging lens system, the focal length of the fourth lens element **330** is f4, the focal length of the fifth lens element **340** is f5, and they satisfy the relation: f4/f5=−0.91.

In the second embodiment of the present imaging lens system, each of the third lens element **320**, the fourth lens element **330** and the fifth lens element **340** is a meniscus lens element, wherein $R_o$ represents the radius of curvature of the object-side surface of the meniscus lens element, $R_i$ represents the radius of curvature of the image-side surface of the meniscus lens element, and they satisfy the relations:

$R_o/R_i$=0.97 (the third lens element 320),

$R_o/R_i$=1.05 (the fourth lens element 330),

$R_o/R_i$=1.48 (the fifth lens element 340).

In the second embodiment of the present imaging lens system, the radius of curvature of the object-side surface **301** of the first lens element **300** is R1, the focal length of the imaging lens system is f, and they satisfy the relation: R1/f=0.30.

10

In the second embodiment of the present imaging lens system, an electronic sensor on the image plane **370** is provided for the image formation of the imaged object. The distance on the optical axis between the object-side surface **301** of the first lens element **300** and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and they satisfy the relation: TTL/ImgH=1.66.

In the second embodiment of the present imaging lens system, the radius of curvature of the image-side surface **312** of the second lens element **310** is R4, the focal length of the imaging lens system is f, and they satisfy the relation: R4/f=0.83.

In the second embodiment of the present imaging lens system, the Abbe number of the second lens element **310** is V2, the Abbe number of the third lens element **320** is V3, and they satisfy the relation: |V2−V3|=0.0.

The detailed optical data of the second embodiment is shown in FIG. **9** (TABLE 3), and the aspheric surface data is shown in FIG. **10** (TABLE 4), wherein the units of the radius of curvature, the thickness and the focal length are expressed in mm, and HFOV is half of the maximal field of view.

FIG. **5** shows an imaging lens system in accordance with a third embodiment of the present invention, and FIG. **6** shows the aberration curves of the third embodiment of the present invention. The imaging lens system of the third embodiment of the present invention mainly comprises five lens elements including, in order from the object side to the image side: a plastic first lens element **500** with positive refractive power having a convex object-side surface **501** and a concave image-side surface **502**, the object-side and image-side surfaces **501** and **502** thereof being aspheric; a plastic second lens element **510** with negative refractive power having a convex object-side surface **511** and a concave image-side surface **512**, the object-side and image-side surfaces **511** and **512** thereof being aspheric; a plastic third lens element **520** with positive refractive power having a convex object-side surface **521** and a concave image-side surface **522**, the object-side and image-side surfaces **521** and **522** thereof being aspheric; a plastic fourth lens element **530** with positive refractive power having a concave object-side surface **531** and a convex image-side surface **532**, the object-side and image-side surfaces **531** and **532** thereof being aspheric; and a plastic fifth lens element **540** with negative refractive power having a convex object-side surface **541** and a concave image-side surface **542**, the object-side and image-side surfaces **541** and **542** thereof being aspheric, and each of which being provided with at least one inflection point; wherein an aperture stop **550** is disposed between an imaged object and the first lens element **500**; wherein the imaging lens system further comprises an IR filter **560** disposed between the image-side surface **542** of the fifth lens element **540** and the image plane **570**; and wherein the IR filter **560** has no influence on the focal length of the imaging lens system.

The equation of the aspheric surface profiles of the third embodiment has the same format as that of the first embodiment.

In the third embodiment of the present imaging lens system, the focal length of the imaging lens system is f, and it satisfies the relation: f=5.47.

In the third embodiment of the present imaging lens system, the f-number of the imaging lens system is Fno, and it satisfies the relation: Fno=2.9.

US 9,784,948 B2

| 11 | 12 |

In the third embodiment of the present imaging lens system, half of the field of view of the imaging lens system is HFOV, and it satisfies the relation: HFOV=33.0 degrees.

In the third embodiment of the present imaging lens system, the on-axis spacing between the first lens element **500** and the second lens element **510** is T12, the focal length of the imaging lens system is f, and they satisfy the relation: (T12/f)×100=0.91.

In the third embodiment of the present imaging lens system, the Abbe number of the first lens element **500** is V1, the Abbe number of the second lens element **510** is V2, and they satisfy the relation: V1−V2=32.5.

In the third embodiment of the present imaging lens system, the focal length of the imaging lens system is f, the focal length of the first lens element **500** is f1, and they satisfy the relation: f/f1=1.45.

In the third embodiment of the present imaging lens system, the focal length of the fourth lens element **530** is f4, the focal length of the fifth lens element **540** is f5, and they satisfy the relation: f4/f5=−0.85.

In the third embodiment of the present imaging lens system, each of the third lens element **520**, the fourth lens element **530** and the fifth lens element **540** is a meniscus lens element, wherein $R_o$ represents the radius of curvature of the object-side surface of the meniscus lens element, $R_i$ represents the radius of curvature of the image-side surface of the meniscus lens element, and they satisfy the relations:

$R_o/R_i$=0.98 (the third lens element 520),

$R_o/R_i$=1.05 (the fourth lens element 530),

$R_o/R_i$=1.42 (the fifth lens element 540).

In the third embodiment of the present imaging lens system, the radius of curvature of the object-side surface **501** of the first lens element **500** is R1, the focal length of the imaging lens system is f, and they satisfy the relation: R1/f=0.29.

In the third embodiment of the present imaging lens system, an electronic sensor on the image plane **570** is provided for the image formation of the imaged object. The distance on the optical axis between the object-side surface **501** of the first lens element **500** and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and they satisfy the relation: TTL/ImgH=1.66.

In the third embodiment of the present imaging lens system, the radius of curvature of the image-side surface **512** of the second lens element **510** is R4, the focal length of the imaging lens system is f, and they satisfy the relation: R4/f=0.79.

In the third embodiment of the present imaging lens system, the Abbe number of the second lens element **510** is V2, the Abbe number of the third lens element **520** is V3, and they satisfy the relation: |V2−V3|=0.0.

The detailed optical data of the third embodiment is shown in FIG. **11** (TABLE 5), and the aspheric surface data is shown in FIG. **12** (TABLE 6), wherein the units of the radius of curvature, the thickness and the focal length are expressed in mm, and HFOV is half of the maximal field of view.

It is to be noted that TABLES 1-6 (illustrated in FIGS. **7-12** respectively) show different data of the different embodiments, however, the data of the different embodiments are obtained from experiments. Therefore, any imaging lens system of the same structure is considered to be within the scope of the present invention even if it uses different data. The preferred embodiments depicted above are exemplary and are not intended to limit the scope of the present invention. TABLE 7 (illustrated in FIG. **13**) shows the data of the respective embodiments resulted from the equations.

What is claimed is:

**1**. An imaging lens system including, in order from an object side to an image side:

a first lens element having a concave image-side surface;

a second lens element;

a third lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric;

a fourth lens element with positive refractive power having a convex image-side surface; and

a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point;

wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system.

**2**. The imaging lens system according to claim **1**, wherein a focal length of the fourth lens element is f4, a focal length of the fifth lens element is f5, and the following relation is satisfied:

−1.5<f4/f5<−0.5.

**3**. The imaging lens system according to claim **2**, wherein the second lens element has a convex object-side surface.

**4**. The imaging lens system according to claim **1**, wherein the first lens element has positive refractive power.

**5**. The imaging lens system according to claim **4**, wherein the second lens element has negative refractive power.

**6**. The imaging lens system according to claim **4**, wherein an Abbe number of the first lens element is V1, an Abbe number of the second lens element is V2, and the following relation is satisfied:

20<V1−V2.

**7**. The imaging lens system according to claim **4**, wherein a focal length of the imaging lens system is f, a focal length of the first lens element is f1, and the following relation is satisfied:

1.0<f/f1<1.8.

**8**. The imaging lens system according to claim **1**, wherein on-axis spacing between the first lens element and the second lens element is T12, a focal length of the imaging lens system is f, and the following relation is satisfied:

0.5<(T12/f)*100<15.

**9**. The imaging lens system according to claim **1**, wherein the fourth lens element has a concave object-side surface.

**10**. The imaging lens system according to claim **1**, further comprising an electronic sensor with an effective pixel area, wherein on-axis spacing between the object-side surface of the first lens element and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and the following relation is satisfied:

TTL/ImgH<2.0.

13

**11.** The imaging lens system according to claim **1**, wherein the third lens element has the smallest central thickness among all five lens elements of the imaging lens system.

**12.** The imaging lens system according to claim **1**, wherein a value of a focal length of the first lens element and a value of a focal length of the second lens element are opposite in signs.

**13.** The imaging lens system according to claim **1**, wherein an absolute value of a curvature radius of the object-side surface of the second lens element is larger than an absolute value of a curvature radius of the image-side surface of the second lens element.

**14.** An imaging lens system including, in order from an object side to an image side:

a first lens element having a concave image-side surface;
a second lens element;
a third lens element with negative refractive power having an object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric;
a fourth lens element with positive refractive power having a convex image-side surface; and
a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point;
wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system;
wherein a focal length of the fourth lens element is f4, a focal length of the fifth lens element is f5, and the following relation is satisfied:

$$-1.5 < f4/f5 < -0.79.$$

**15.** The imaging lens system according to claim **14**, wherein the object-side surface of the third lens element is a convex surface, and the object-side surface of the third lens element has at least one concave shape at an off-axis portion.

**16.** The imaging lens system according to claim **14**, further comprising an electronic sensor with an effective pixel area, wherein on-axis spacing between the object-side surface of the first lens element and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and the following relation is satisfied:

$$TTL/ImgH < 2.0.$$

**17.** The imaging lens system according to claim **14**, wherein the fourth lens element has a concave object-side surface.

**18.** The imaging lens system according to claim **14**, wherein a focal length of the imaging lens system is f, a focal length of the first lens element is f1, and the following relation is satisfied:

$$1.0 < f/f1 < 1.8.$$

**19.** The imaging lens system according to claim **18**, wherein an Abbe number of the first lens element is V1, an Abbe number of the second lens element is V2, and the following relation is satisfied: $20 < V1 - V2$.

**20.** The imaging lens system according to claim **18**, wherein on-axis spacing between the first lens element and

14

the second lens element is T12, a focal length of the imaging lens system is f, and the following relation is satisfied:

$$0.5 < (T12/f)*100 < 15.$$

**21.** The imaging lens system according to claim **14**, wherein the object-side surface of the first lens element has at least one convex shape at the off-axis portion.

**22.** The imaging lens system according to claim **14**, wherein the first lens element has an object-side surface, the second lens element has an object-side surface and an image-side surface, the fourth lens element has an object-side surface, and the object-side and image-side surfaces of the first, second, and fourth lens elements are aspheric; wherein the first, second, third, fourth and fifth lens elements are made of plastic.

**23.** An imaging lens system including, in order from an object side to an image side:

a first lens element having a concave image-side surface;
a second lens element;
a third lens element with negative refractive power having an object-side surface and an image-side surface, the object-side and image-side surfaces thereof being aspheric;
a fourth lens element with positive refractive power having a concave object-side surface and a convex image-side surface;
a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point; and
an electronic sensor with an effective pixel area;
wherein a value of a focal length of the first lens element and a value of a focal length of the second lens element are opposite in signs;
wherein there are a total of five lens elements in the imaging lens system, a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system; wherein on-axis spacing between the object-side surface of the first lens element and the electronic sensor is TTL, half of the diagonal length of the effective pixel area of the electronic sensor is ImgH, and the following relation is satisfied:

$$TTL/ImgH < 2.0.$$

**24.** The imaging lens system according to claim **23**, wherein a focal length of the fourth lens element is f4, a focal length of the fifth lens element is f5, and the following relation is satisfied:

$$-1.5 < f4/f5 < -0.5.$$

**25.** The imaging lens system according to claim **23**, wherein the first lens element has a convex object-side surface, and the first lens element has positive refractive power.

**26.** The imaging lens system according to claim **25**, wherein on-axis spacing between the first lens element and the second lens element is T12, a focal length of the imaging lens system is f, and the following relation is satisfied:

$$0.5 < (T12/f)*100 < 15.$$

**27.** The imaging lens system according to claim **25**, wherein an Abbe number of the first lens element is V1, an Abbe number of the second lens element is V2, and the following relation is satisfied:

$$20 < V1 - V2.$$

US 9,784,948 B2

15

16

**28**. The imaging lens system according to claim **23**, wherein the third lens element has the smallest central thickness among all five lens elements of the imaging lens system.

**29**. The imaging lens system according to claim **23**, wherein an absolute value of a curvature radius of the object-side surface of the second lens element is larger than an absolute value of a curvature radius of the image-side surface of the second lens element.

* * * * *